**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

| | |
|---|---|
| R.S., a Minor, by and through her Guardian SARAH DOVER, individually and on behalf of all similarly situated individuals, | : |
| | : |
| | : |
| Plaintiff, | : Case No. 22-cv-03479 |
| vs. | : |
| | : |
| IDOLOGY, INC., a Georgia corporation, | : |
| | : |
| Defendant. | : |

---

**DEFENDANT IDOLOGY INC.'S MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT**

## I.    INTRODUCTION

This case arises from allegations that a minor, R.S. ("Plaintiff"), "[b]etween 2018 and 2019 . . . registered" online with a third-party, "Roblox, the maker of a popular children's video game," with the goal of joining "Roblox's developers program." ECF 14 ¶¶ 22, 26. Plaintiff alleges that when she took this step, she "upload[ed] her school identification documents and a 'selfie' photograph" to "a biometrically-enabled Application Programming Interface (or 'API')" developed by defendant IDology, Inc. *Id.* ¶¶ 21 & 27. Plaintiff now sues IDology based on its alleged failure to comply with several aspects of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq. See, e.g.*, ECF 14 ¶¶ 50-52.

The Court should dismiss this case because it lacks personal jurisdiction over IDology, which Plaintiff concedes is "a Georgia corporation." ECF 14 ¶ 17. Although Plaintiff also makes the conclusory assertion that IDology "conducts business throughout Illinois," she fails to allege the requisite jurisdictional facts—let alone identify *prima facie* evidence—to justify this Court's exercise of judicial power over IDology. *Id.* Numerous pleading deficiencies also independently

warrant dismissal, including Plaintiff's improper attempt to apply BIPA outside Illinois. Plaintiff separately fails to allege essential prerequisites certain aspects of her BIPA claims, and pleads others only in the most conclusory manner. Plaintiff even inappropriately resorts to pleading "on information and belief" certain facts for which she identifies neither any factual basis to support their truth, nor any bearing on IDology's intent or other information inaccessible to her. For these and other reasons elaborated below, the Court should dismiss this case.

## II.  STATEMENT OF RELEVANT ALLEGATIONS

Plaintiff alleges she is a resident of Illinois who, "[b]etween 2018 and 2019, . . . registered" online with a third-party, "Roblox, the maker of a popular children's video game," with the goal of joining "Roblox's developers program." ECF 14 ¶¶ 18, 22, 26-27. In doing so, Plaintiff alleges she "upload[ed] her school identification documents and a 'selfie' photograph" to "a biometrically-enabled . . . API" developed by defendant IDology, and alleges that Roblox is a client of IDology that incorporates its API. *Id.* ¶¶ 22 & 27. Plaintiff asserts she did all this in Illinois, but admits IDology is a Georgia corporation. *Id.* ¶¶ 17 & 27. She does not plausibly allege that IDology engaged in any acts within or directed toward Illinois relevant to this litigation, and instead avers that IDology's biometrically-enabled API is incorporated into Roblox's "mobile or internet-based applications." *Id.* ¶ 22. Because Plaintiff's registration allegedly "collected the IP [internet protocol] address and geolocation of the device Plaintiff used to upload her identification documents and selfie picture," Plaintiff resorts to contending that IDology "knew its API was interacting with an individual located in the state of Illinois." *Id.* ¶ 28.

Plaintiff also alleges, "on information and belief," that IDology "disclosed and/or disseminated Plaintiff's biometric data" to third parties "for data processing and data storage" without her consent. *Id.* ¶ 30. She avers that, "[p]rior to taking Plaintiff's biometrics, Defendant did not seek, and Plaintiff never provided, any written consent relating to [even] the collection or

capture of her biometrics." *Id.* ¶ 31. She further complains that IDology "failed to provide Plaintiff with written disclosures informing her of the specific purpose and length of term for which her biometrics were being collected." *Id.* Plaintiff likewise contends that IDology "failed to make publicly available [a] written biometric retention and destruction policy." *Id.* ¶ 32. Again, "on information and belief," Plaintiff avers IDology "unlawfully profited from the facial biometrics it obtained," based on the assumption that "Defendant is paid by its clients for access to Defendant's facial recognition and matching platform on a per-biometric-verification basis." *Id.* ¶ 33.

With nothing more than these formulaic assertions of purported fact and belief, Plaintiff in April filed this putative class action in the Circuit Court for the Twelfth Judicial Circuit for Will County, Illinois, asserting a single count for violation of BIPA. ECF 1-2. Following some delay in service, IDology timely removed the case to this Court. ECF 1. IDology then likewise timely moved to dismiss. ECF 11. Rather than respond to IDology's motion, Plaintiff filed the operative First Amended Class Action Complaint. ECF 14. IDology now moves to dismiss again.

## III.   <u>GOVERNING LEGAL STANDARDS</u>

Federal courts have limited jurisdiction, and generally may not exercise judicial power over defendants that do not reside in the forum. For nearly seven decades, the touchstone for exercising jurisdiction over non-residents has been the familiar "minimum contacts" test that evaluates whether maintenance of the suit offends traditional notions of fair play and substantial justice in light of the defendant's forum connections. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). But just over a decade ago, the Supreme Court began to dramatically rein in the exercise of judicial power that lower courts had been wielding in a manner far more expansive than the Constitution permits—each time narrowing the circumstances that permit the exercise of personal jurisdiction. *See Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S. Ct. 1773 (2017) (reversing exercise of jurisdiction); *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017) (same); *Walden v. Fiore*,

571 U.S. 277 (2014) (same); *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (same); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) (same); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) (same).

The Supreme Court's most recent pronouncement on the subject, *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021), re-emphasizes the Constitution's "real limits" on the jurisdictional significance of perceived connections between a nonresident defendant's forum contacts and a plaintiff's claims. *Id.* at 1026. Importantly, the Court made this point despite approving of the exercise of jurisdiction by two state courts in that case based, in part, on the defendant having expressly "conceded 'purposeful availment'" arising from its substantial, direct business within the relevant forum states. *Id.* at 1028. In any case, the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Ordinarily, a plaintiff may satisfy this burden only by making a *prima facie* showing of facts that justify the Court's personal jurisdiction over the defendant. *Id.* at 701.

The power to exercise personal jurisdiction manifests in two basic ways: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear*, 564 U.S. at 919. For a corporation, "the paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Id.* at 924. In other words, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024. There are three requirements. First, the defendant must have "purposefully availed" itself of "the benefits and protections of the forum's laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 & 482

(1985) (citation omitted). Generally, this requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 141 S. Ct. at 1025. Third, the Court must harken back to *International Shoe* and assess the reasonableness and substantial justice of exercising jurisdiction over the defendant in the particular case. *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).

If the Court may properly exercise personal jurisdiction over a defendant, it may also appropriately wield its judicial power to dismiss any claim the plaintiff fails to plead in a plausible way. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive, the claim must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court should disregard any "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A plaintiff may not evade the requirement to plead facts simply by invoking the phrase, "information and belief," and must at a minimum "plead the grounds for his suspicions" even in cases of fraud or when the full story is "inaccessible to the plaintiff" and even after conducting a thorough pre-filing inquiry. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992); *see, e.g.*, *MacLean-Fogg Co. v. Edge Composites, L.L.C.*, No. 08 C 6367, 2009 U.S. Dist. LEXIS 31267, at *15, 2009 WL 1010426 (N.D. Ill. Apr. 14, 2009) ("Allegations based exclusively on information and belief are insufficient unless the facts are inaccessible to the pleader, and there is a reasonable basis to suspect the facts are true.") (collecting cases); *accord*

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief.").

Even if a legal theory appears cognizable and the plaintiff details her factual allegations, if those "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claim warrants dismissal. *Iqbal*, 556 U.S. at 679. A claim is "plausible" and therefore cognizable only if it offers more than the mere "possibility that a defendant has acted unlawfully" or is "'merely consistent with' a defendant's liability." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level". *Twombly*, 550 U.S. at 555 (citations omitted).

## IV.  ARGUMENT

### A.  The Court Lacks Personal Jurisdiction Over IDology.

Plaintiff fails to plead—let alone make the required *prima facie* showing of—the Court's personal jurisdiction over IDology. Indeed, Plaintiff concedes IDology is "a Georgia corporation" and although she is silent regarding IDology's principal place of business, ECF 14 ¶ 17, it is likewise in Georgia, ECF 1-1 (Declaration of Christina Luttrell In Support of Notice of Removal) ¶ 4. On this record, the Court cannot conclude that IDology "is fairly regarded as at home" to justify the exercise of all-purpose or general jurisdiction over IDology in this forum. *Goodyear*, 564 U.S. at 924; *see also Daimler AG*, 571 U.S. at 137 (explaining that a corporation is "at home" only in its "place of incorporation and principal place of business").[1]

The Court similarly lacks specific jurisdiction over IDology in this case. As a preliminary matter, Plaintiff makes only the most conclusory allegations of purposeful availment, averring

---

[1] Plaintiff's legal assertion that "this Court may exercise personal jurisdiction" over IDology because "it has sufficient minimum contacts with Illinois," ECF 14 ¶ 20, is so bereft of supporting facts that this Court may disregard it. *See Papasan*, 478 U.S. at 286.

simply that IDology "conducts business throughout Illinois." ECF 14 ¶ 17. Courts routinely reject such threadbare and formulaic allegations of purposeful availment. *See, e.g.*, *RSK Enters., LLC v. Comcast Spectacor, L.P.*, No. 17-cv-02941, 2018 U.S. Dist. LEXIS 2814, at *14-15, 2018 WL 319318 (N.D. Ill. Jan. 8, 2018) (dismissing case in the face of "[p]laintiff's conclusory assertion that [the defendant] 'solicits, transacts and does business within the state of Illinois'"); *see also, e.g.*, *Klutz v. Yagoozon, Inc.*, No. 16 Civ. 4538 (JSR), 2016 U.S. Dist. LEXIS 133841, at *4, 2016 WL 5806902 (S.D.N.Y. Sep. 19, 2016) (dismissing case because "plaintiff merely alleges in wholly conclusory fashion that defendant 'does business in New York'"); *Meschkow & Gresham, P.L.C. v. Franchise Capital Corp.*, No. CV 09-2238-PHX-SRB, 2011 U.S. Dist. LEXIS 162498, at *12, 2011 WL 13183226 (D. Ariz. Apr. 14, 2011) ("Merely alleging that [defendant] does business in this state . . . does not meet the requirements of Rule 12(b)(2).").

Plaintiff independently fails to plead facts plausibly showing her case arises from or relates to forum contacts by IDology. Instead, she focuses on her own conduct *with a third party* within the state. ECF 14 ¶ 26 (alleging that "Plaintiff registered with Roblox in Illinois"). Although Plaintiff alleges that IDology "collected" information associated with her "upload," and, "[o]n information and belief, . . . then disclosed and/or disseminated Plaintiff's biometric data to [other] third parties," she fails to allege IDology did those things in Illinois. *Id.* ¶¶ 28 & 30. Plaintiff does allege that IDology "collected, stored, and analyzed Plaintiff's facial geometry in Illinois." *Id.* ¶ 29. But even this allegation fails to establish specific jurisdiction. *See Gutierrez v. Wemagine.ai LLP*, No. 21 C 5702, 2022 U.S. Dist. LEXIS 14831, at *7 (N.D. Ill. Jan. 26, 2022) (deeming allegation that Plaintiff's "facial geometry was collected by the Defendant in Illinois" jurisdictionally insufficient). In short, Plaintiff provides no jurisdictional nexus between IDology and this forum. *See Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008).

Numerous cases in this District have dismissed BIPA defendants for lack of personal jurisdiction in similar circumstances. *See, e.g.*, *Gutierrez*, 2022 U.S. Dist. LEXIS 14831, at \*4-5 (dismissing BIPA defendant because "[t]he only connection between [defendant] and Illinois is [plaintiff]," explaining that the fact that defendant's software "is used by Illinois residents does not, on its own, create a basis for personal jurisdiction over [defendant]"); *McGoveran v. Amazon Web Servs.*, 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020) (dismissing BIPA defendant because "the litigation does not arise from contacts that Defendants themselves created with Illinois or actions purposefully directed at residents of Illinois"); *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 U.S. Dist. LEXIS 6958, at \*6, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) (dismissing BIPA defendant "[b]ecause plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents," and noting that "the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook").[2]

At most, Plaintiff's pleadings suggest IDology obtained access to Plaintiff's data through an API integrated in the "mobile or internet-based applications" of Roblox. *Id.* ¶ 22. Such ephemeral alleged contacts do not provide a basis to exercise personal jurisdiction. *See Matlin*, 921 F.3d at 706 ("[C]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates an interactive website that is accessible in the forum state."); *see also, e.g.*, *Salkauskaite v. Sephora USA, Inc.*, No. 18-CV-08507, 2020 U.S. Dist. LEXIS 94760, at \*4, 2020 WL 2796122 (N.D. Ill. May 30, 2020) ("[T]he use of [defendant's] technology in the forum

---

[2] It is irrelevant that Plaintiff also alleges IDology has "many clients that [it] knows do business in Illinois." ECF 14 ¶ 22; *see Walden*, 571 U.S. at 291 ("[U]nilateral activity of a third party . . . cannot satisfy the requirement of contact with the forum state.") (quoting *Hanson*, 357 U.S. at 253); *see also, e.g.*, *McGoveran*, 488 F. Supp. 3d at 721 ("[S]pecific jurisdiction cannot be established thorough a third party's contacts with the forum state . . . ."); *Johnson v. Barrier*, No. 15-CV-03928, 2016 U.S. Dist. LEXIS 83363, \*10 (N.D. Ill. Jun. 28, 2016) (ignoring allegations of third-party contacts in its jurisdictional analysis).

is at most a random, fortuitous, or attenuated contact. Moreover, any such contact would be the result of actions by . . . a co-defendant, not by [defendant] itself.") (citations omitted); *Bray v. Lathem Time Co.*, No. 19-3157, 2020 U.S. Dist. LEXIS 53419, at *8, 2020 WL 1492742 (C.D. Ill. Mar. 26, 2020) ("[I]f the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.") (quotation omitted); *accord Paramount Pictures Corp. v. Does*, No. 2:21-cv-09317-MCS-SK, 2022 U.S. Dist. LEXIS 109051, at *6-7, 2022 WL 2189633 (C.D. Cal. Apr. 20, 2022) ("[T]he Ninth Circuit has held that a court does not have personal jurisdiction over a website operator whose United States users upload infringing content and over a website operator who uses geolocated advertisements to attract new users.") (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210-11 (9th Cir. 2020)).[3]

The Court thus lacks jurisdiction over IDology and should dismiss the Complaint.

---

[3] Plaintiff alleges an unspecified number of IDology's "National Sales Executives reside in Chicago," where they "regularly attend promotional and marketing conferences." ECF 14 ¶ 23. Because she fails to connect these activities to her BIPA claims, they do not support the exercise of specific jurisdiction in this case. *See, e.g.*, *Martino v. Orchard Enters.*, No. 20-cv-02267, 2020 U.S. Dist. LEXIS 199687, at *15-16, 2020 WL 6287400 (N.D. Ill. Oct. 27, 2020) (rejecting defendant's employment of Illinois residents unrelated to the plaintiff's claim for purposes of jurisdiction); *Matlin v. Spin Master Corp.*, No. 17-cv-07705, 2018 U.S. Dist. LEXIS 122014, at *15-16, 2018 WL 3496088 (N.D. Ill. July 20, 2018) ("[T]he hiring of a Spin Master employee in Illinois does not establish personal jurisdiction over a claim of unjust enrichment because the contact with the forum - the hiring of an employee within the State - is not sufficiently related to the benefit derived from unpaid royalties."), *aff'd* 921 F.3d 701 (7th Cir. 2019). Plaintiff's separate allegation that IDology "touts its superior ability to detect fraudulent transactions . . . originating in Illinois through the use of geolocation tracking technology," ECF 14 ¶ 24, likewise fails to present a basis for the exercise of personal jurisdiction because it has nothing to do with this case.

### B. Plaintiff's Complaint Fails to State a Cognizable BIPA Claim.

#### 1. Plaintiff Seeks An Improper Extraterritorial Application of BIPA.

Plaintiff also advances an interpretation of BIPA that would extend its scope outside of Illinois borders, in violation of "the long-standing rule of construction in Illinois" that a "'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 810, 184-85 (Ill. 2005) (quotation omitted). Because the Illinois General Assembly did not express that clear intent in BIPA, all violations of the statute "must occur in Illinois in order for plaintiffs to obtain any relief." *McGoveran v. Amazon Web Servs., Inc.*, No. 20 CV 1399, 2021 U.S. Dist. LEXIS 189633, at *3, 2021 WL 4502089 (D. Del. Sep. 30, 2021) (dismissing BIPA claims for extraterritoriality); *see also Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 U.S. Dist. LEXIS 149604, at *15, 2017 WL 4099846 (N.D. Ill. Sep. 15, 2017) ("[N]one of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect."). Although "there is no single formula or bright-line test for determining whether a transaction occurs within this state," courts reject the conduct of out-of-state defendants as triggering BIPA unless "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854; *accord McGoveran*, 2021 U.S. Dist. LEXIS 189633, at *8-9. Reaching such a conclusion requires "the majority of circumstances relating to the alleged violation of the [statute]" to have occurred in Illinois. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. Ct. 2008).

Plaintiff's operative Complaint does not satisfy this standard. Like the allegations that the *McGoveran* court found insufficient, Plaintiff in this case fails to allege any conduct on IDology's part that occurred in Illinois. Although she asserts that IDology "collected, stored, and analyzed" the data she uploaded and contends that this all occurred in Illinois, this allegation is apparently premised on Plaintiff's mere "information and belief." ECF 14 at p.1 & ¶ 29. Importantly, Plaintiff

does not contend that IDology "disclosed and/or disseminated Plaintiff's biometric data" to third parties "for data processing and data storage purposes" within the state. *Id.* ¶ 30. Nor does Plaintiff contend that IDology was "paid by its clients" within the state. *Id.* ¶ 33. Instead, the only Illinois-related allegations that Plaintiff bases on her "personal knowledge"—rather than speculation on "information and belief"—focus on her residency when she uploaded her data. *Id.* ¶ 18 (alleging Plaintiff "is a resident of Illinois") & *id.* ¶ 26 ("Plaintiff registered with Roblox in Illinois").

As *McGoveran* explains, "[a] plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." 2021 U.S. Dist. LEXIS 189633, at *12 (citing *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 755 (N.D. Ill. 2008) (dismissing claim despite plaintiffs' Illinois residency), and *Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, No. 07 C 3371, 2013 U.S. Dist. LEXIS 45112, at *22, 2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) (dismissing claim in light of the "weak connection to Illinois" notwithstanding plaintiff's residency). Plaintiff's BIPA claim should face the same fate.[4]

### 2. Plaintiff Fails to Plead Plausible BIPA Section 15(c) & (d) Claims.

Section 15(c) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). In other words, it regulates circumstances with "two components: (1) access to biometric data is shared or given to

---

[4] The Constitution's exclusive reservation of power in Congress to regulate commerce "among the several states," U.S. Const., Art. I § 8, "limit[s] . . . the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). This so-called dormant Commerce Clause "precludes the application of a state statute" that has "the practical effect of . . . control[ling] conduct beyond the boundaries of the State," "whether or not the commerce has effects within the State," and thereby prevents "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Id.* at 336-37. Permitting BIPA to apply in this case would therefore also violate the dormant Commerce Clause, as Georgia has not enacted a comprehensive biometric privacy bill like BIPA.

another; and (2) in return for that access, the entity receives something of value." *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021). Thus, no claim arises even if the defendant allegedly receives value from its collection of biometric data—such as by improving its own products and technologies, even if doing so boosts its sales—if the defendant purportedly does not actually disseminate the data it collects. *Id.* at 1309 (dismissing Section 15(c) claim); *cf. Vance v. Amazon.com Inc.*, 534 F. Supp. 3d 1314, 1322 (W.D. Wash. 2021) ("BIPA was not intended to stop all use of biometric technology; instead, it set a standard for the safe collection, use, and storage of biometrics, including protecting against the public's main fear that their biometric data would be *widely disseminated*.") (emphasis added).

Plaintiff's allegations do not support a plausible Section 15(c) claim. She generally contends—twice, and both times expressly "[o]n information and belief"—that IDology "disclosed and/or disseminated Plaintiff's biometric data" to third parties "for data processing and data storage purposes."[5] ECF 14 ¶ 30; *see also id.* ¶ 49 (alleging same "for data storage or redundancy purposes"). Plaintiff likewise avers—again, twice "on information and belief"—that IDology "is paid by its clients for access to Defendant's facial recognition and matching platform on a per-biometric-verification basis." *Id.* ¶¶ 33 & 51. Because Plaintiff's "information and belief" allegations are unaccompanied by "the grounds for h[er] suspicions," the Court should reject them. *Bankers Trust Co.*, 959 F.2d at 684; *see also, e.g., MacLean-Fogg Co.*, 2009 U.S. Dist. LEXIS 31267 at *15.

Plaintiff's allegations fail for the independent reason that they do not plausibly assert that anyone both received access to Plaintiff's biometric information and paid for it. It bears reemphasizing that Plaintiff alleges only that IDology disseminated Plaintiff's biometric data to

---

[5] Plaintiff identifies no factual basis for these allegations that Roblox's API (rather than a third party's) was involved in the underlying circumstances upon which she bases her claims.

*third parties* for "data storage," "redundancy purposes," and a single, unspecified reference to "data processing." ECF 14 ¶¶ 30 & 49. Plaintiff does not contend that these vendors paid for this data. *See, e.g.*, *WeR1 World Network v. CyberLynk Network, Inc.*, 57 F. Supp. 3d 926, 932 (E.D. Wis. 2014) (discussing contract to "pay a certain amount per month for data storage" *to the vendors* hosting the data); *see also, e.g.*, *Ipro Tech LLC v. Sun West Mortg. Co.*, No. CV-17-04015-PHX-DLR, 2019 U.S. Dist. LEXIS 48152, at *4, 2019 WL 2106417 (D. Ariz. Mar. 21, 2019) (same); *C.D.S., Inc. v. Zetler*, 298 F. Supp. 3d 727, 754 (S.D.N.Y. 2018) (same).

In contrast, Plaintiff avers that IDology was "paid by its *clients*," but then goes on to allege that IDology received the payments only "for *access* to [its] facial recognition and matching *platform* on a per-biometric-*verification* basis." ECF 14 ¶ 33 (emphases added). In other words, Plaintiff alleges that IDology's clients simply paid to access a platform that provides a verification of user biometric information, as distinct from actually obtaining any of the biometric data she contends to be "an essential element of Defendant's business." *Id.* Particularly given Plaintiff's "information and belief" pleading, her operative Complaint offers no more than a remote "possibility that [the] defendant has acted unlawfully," and therefore warrants dismissal of her Section 15(c) claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Many of these same deficiencies afflict Plaintiff's Section 15(d) claim, which arises from a single "information and belief" allegation devoid of facts to support Plaintiff's contention that Defendant violated that provision. ECF 14 ¶ 30. For these reasons, it too must fail. *Cf. Bernal v. ADP*, LLC, No. 2017-CH-12364, 2019 Ill. Cir. LEXIS 1025, at *8-9, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(d) claim, explaining that any "[s]uggesti[on] that the technology Defendant created allows for the dissemination of biometric information is not an allegation of the Defendant's disseminating biometric information."); *Jacobs v. Hanwha Techwin*

- 13 -

*Am., Inc.*, No. 21 C 866, 2021 U.S. Dist. LEXIS 139668, at *9-10, 2021 WL 3172967 (N.D. Ill. July 27, 2021) (dismissing Section 15(d) claim as "plaintiff offers no basis for its allegation that defendant disclosed his biometric data, or that of the putative class members" and instead relied on mere "information and belief" speculation); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (same).

### 3.   Plaintiff Pleads No Plausible, Intentional Or Reckless BIPA Violation.

BIPA allows plaintiffs to recover $5,000 for each violation the defendant commits "intentionally or recklessly." 740 ILCS 14/20(2). Plaintiff unsurprisingly prays for this relief, but fails to allege facts that plausibly support it. Instead, she advances only formulaic labels to characterize IDology's purported violations as "knowing and willful, or at least reckless." ECF 14 ¶ 54. As another case recently remarked, this "conclusory statement of [IDology's] intent is insufficient to allow [this Court] to infer that [IDology] acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15." *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019). The Court should thus dismiss Plaintiff's BIPA claims to the extent Plaintiff premises them on IDology's alleged intentional and reckless misconduct.

Although "BIPA does not define 'intentionally' or 'recklessly," courts have found that "[i]ntentional conduct is conduct performed with a desire to cause consequences or at least a substantially certain belief that the consequences will result," while "recklessness denotes a course of action which shows an utter indifference to or a conscious disregard." *Id.* at 618 (quotations omitted). A plaintiff must therefore "alleg[e] sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* (quotation and citation omitted); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing BIPA claim based on intentional and reckless conduct without supporting facts).

Plaintiff does not do so, and instead simply labels IDology's violations of BIPA "knowing and willful," adding only that "BIPA has been in existence since 2008, and BIPA's minimally-burdensome compliance regime may be satisfied with a single sheet of paper or a single webpage screen." ECF 14 ¶ 54.[6] This formulaic allegation is virtually indistinguishable from the pleading found deficient by the *Namuwonge* court. *See* 418 F. Supp. 3d at 286 ("[Plaintiff] has alleged that [defendant] failed to maintain a satisfactory biometric data retention policy, despite BIPA taking effect more than ten years ago. . . . [These] abstract statements regarding damages are insufficient for the Court to infer that [defendant] acted recklessly or intentionally."). Without plausible factual allegations showing intent, recklessness—or even negligence—the Court should dismiss the operative Complaint to the extent it seeks to recover $5,000 per violation in statutory damages. *See Rogers*, 409 F. Supp. 3d at 618.

**V.     CONCLUSION**

For each of these reasons, the Court should dismiss the operative Complaint pursuant to either Federal Rule of Civil Procedure 12(b)(2) or Rule 12(b)(6).

---

[6] Plaintiff similarly asserts that IDology "knows that its business model and collection of sensitive consumer data subject it to various privacy regimes." ECF 14 ¶ 54, *see id.* at ¶ 34.

**DATED**: August 16, 2022

**COZEN O'CONNOR**

Jack J. Carriglio
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-7900
Facsimile: (312) 474-7898
Jcarriglio@cozen.com
chickman@cozen.com

/s/ Adam R. Fox

**SQUIRE PATTON BOGGS (US) LLP**

Adam R. Fox
(*pro hac vice*)
Hannah Makinde
(*pro hac vice*)
555 S. Flower Street, Suite 3100
Los Angeles, CA 90071
Tel.: (213) 624-2500
Fax: (213) 623-4581
Email: adam.fox@squirepb.com
        hannah.makinde@squirepb.com

Kristin Bryan
(*pro hac vice*)
1000 Key Tower
127 Public Square
Cleveland, OH 44114
Tel.: (216) 479-8500
Fax: (216) 479-8780
Email: kristin.bryan@squirepb.com

Christina Lamoureux
(*pro hac vice*)
2550 M Street NW
Washington DC 20037
Tel.: (202) 457-6000
Fax: (202) 457-6315
Email: christina.lamoureux@squirepb.com

*Attorneys for Defendant,*
*IDology, Inc.*

## CERTIFICATE OF SERVICE

I, Adam Fox, hereby certify that, on August 16, 2022, I caused to be filed the foregoing Defendant IDology, Inc.'s Motion to Dismiss the First Amended Class Action Complaint with the Court via the ECF System, it is available for viewing and downloading from the ECF system, and a true and correct copy was served to all counsel of record registered with the ECF system.

**SQUIRE PATTON BOGGS (US) LLP**

*/s/Adam Fox*
Adam Fox

*Attorney for Defendant,*
*IDology, Inc.*

- 17 -