**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| R.S., a Minor, by and through her Guardian SARAH DOVER, individually and on behalf of all similarly situated individuals, | ) ) ) ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 22-cv-03479 |
| | ) | |
| v. | ) | Hon. Martha M. Pacold |
| | ) | |
| IDOLOGY, INC., a Georgia corporation, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

Dated: September 15, 2022

Timothy P. Kingsbury
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
tkingsbury@mcgpc.com
aheldut@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

## I.     __INTRODUCTION__

Defendant Idology, Inc. ("Defendant" or "Idology") operates an Internet-based identity verification platform. Idology's platform relies on automated biometric facial recognition technology to compare individuals' photo IDs and pictures of their face in order to verify their ages and identities. Between 2018 and 2019, Plaintiff R.S. ("Plaintiff") uploaded her school identification document and a photograph of her face to Defendant's platform while she was in Illinois as part of her registration for a developers' program with Roblox, one of Defendant's clients. Plaintiff alleges that despite collecting and using her biometric data, Defendant failed to comply with the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), which regulates, among other things, private entities' collection and use of Illinois citizens' biometric data.

Defendant's Motion to Dismiss (Dkt. 16, "Motion" or "Mot.") argues under Fed. R. Civ. P. 12(b)(2) that this Court lacks personal jurisdiction over Defendant. But Defendant largely ignores Plaintiff's detailed and well-pled allegations regarding Defendant's intentional marketing, sales, and use of its biometric verification platform in Illinois, and how Defendant purposefully collected and used the biometric data of individuals who it knows are Illinois residents. Defendant does not even attempt to refute such allegations, much less provide any evidence to support its jurisdictional argument. Thus, Defendant's 12(b)(2) argument must be rejected.

Under Fed. R. Civ. P. 12(b)(6), Defendant argues that Plaintiff's claims would require an extraterritorial application of BIPA. That challenge also fails, as Plaintiff adequately alleges Defendant's BIPA violations occurred primarily and substantially in Illinois, and extraterritoriality challenges have been routinely rejected at the motion to dismiss stage by courts in this District. Defendant provides no basis for a different result here. Defendant also attacks Plaintiff's 15(c) and

15(d) BIPA allegations as "speculative" and "conclusory," but the Complaint alleges enough facts to sustain both of these claims. Finally, Defendant requests that the Court strike Plaintiff's request for heightened damages, but as the majority of courts in this District have held, a request for enhanced damages is a demand for relief and not part of a BIPA claim, such that Plaintiff does not have to plead a specific level of culpability at this early stage in the proceedings. And even if that were required, Plaintiff sufficiently alleges that Defendant's violations of BIPA were reckless or intentional.

For those reasons, and as discussed in further detail below, Defendant's Motion should be denied in its entirety.

## II.  FACTUAL ALLEGATIONS

Defendant Idology is a developer and provider of online identity verification services, which include a facial biometric verification component, and integrates its service with its clients' mobile or internet-based applications in order to verify its clients' users' identities. (First Amended Class Action Complaint, "Complaint" or "FAC," Dkt. 14, ¶ 22). Plaintiff registered with Roblox, one of Defendant's clients, in Illinois between 2018 and 2019. (*Id*. ¶ 26). As part of the Roblox onboarding process, Plaintiff was then required to use Defendant's biometric verification portal, where she was required to upload her school identification documents as well as a separate "selfie" photograph. (*Id*. ¶ 27). Using facial recognition technology, Defendant scanned and compared the geometry of the face appearing on Plaintiff's photograph on her ID with the geometry of the face appearing in her "selfie" photograph in order to verify her identity. (*Id*. ¶ 29). Despite collecting Plaintiff's facial biometrics in Illinois, Defendant failed to obtain her informed consent to do so, failed to disclose to her the purpose of its biometric collection and the length of term for which her biometrics would be used, failed to obtain her consent to disseminate her biometric data to others,

and failed to make publicly available a biometric retention and destruction schedule compliant with BIPA (*Id*. ¶¶ 30-32). Accordingly, Plaintiff filed her Complaint against Defendant bringing claims under 740 ILCS 14/15(a), 740 ILCS 14/15(b), 740 ILCS 14/15(c), and 740 ILCS 14/15(d).

## III.   LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant, and when a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only make out a prima facie case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). All well-pleaded facts alleged in the complaint are taken as true, *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010), and the Court accepts the Plaintiff's allegations concerning personal jurisdiction unless the allegations are refuted through undisputed affidavits. *See Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011). "There are two types of personal jurisdiction: general and specific." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd*., 965 F.3d 571, 575 (7th Cir. 2020)). Here, Plaintiff contends that this Court has specific personal jurisdiction over Defendant.

Where a defendant moves to dismiss a complaint under Federal Rule 12(b)(6), the motion does not test the merits of the plaintiffs' claims; rather it "tests only the legal sufficiency of the complaint." *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). When considering a Rule 12(b)(6) motion, the court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the plaintiffs'] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis*., 657 F.3d 496, 502 (7th Cir. 2011). A complaint will survive a Rule 12(b)(6) motion as long as it "contain[s] sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Supreme Auto Transport v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

## IV.   ARGUMENT

### A.   This Court Has Specific Personal Jurisdiction Over Defendant Because It Purposefully Directed Its Biometric Verification Service Towards Illinois, Has Knowingly Obtained Illinois Residents' Biometrics, And Plaintiff's Claims Arise Out Defendant's Illinois-Directed Activities.

For a court to exercise specific personal jurisdiction over an out-of-state defendant, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state . . . the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities [and] any exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020). In determining whether specific personal jurisdiction is appropriate, the Court must accept all undisputed allegations as true and should draw reasonable inferences in Plaintiff's favor. *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020).

Here, Plaintiff makes a *prima facie* case of specific personal jurisdiction over Defendant because she clearly alleges that Defendant has purposefully availed itself of conducting business in Illinois by marketing its biometric verification technology to customers who it knows do business in Illinois, and by knowingly and systematically interacting with Illinois residents such

4

as Plaintiff. Further, Plaintiff's claims arise directly from Defendant's expansive efforts to make its platform available in Illinois.

As alleged in Plaintiff's Complaint, Defendant not only touts its platform's ability to detect fraudulent transactions originating in Illinois (FAC ¶ 24), its platform serves numerous clients that Defendant knows do substantial business in Illinois (FAC ¶ 22). Further evidence of Defendant's purposeful targeting of the Illinois marketplace is the presence of Defendant's National Sales Executives in the Chicago area who "regularly attend promotional and marketing conferences" in Chicago. (FAC ¶ 23). Defendant's (a) targeting of the Illinois marketplace through locating its sales representatives here and attending marketing conferences here; (b) provision of its platform to clients that Defendant knows do business here; and (c) knowing interactions with Illinois residents on a systematic basis (none of which Defendant disputes), are far more than random or fortuitous contacts and are sufficient to establish Defendant's purposeful availment of the Illinois market. *See, e.g.*, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) ("GoDaddy purposefully availed itself of the Illinois market for its services through its deliberate and continuous exploitation of that market"); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (finding the defendant purposefully availed itself of doing business in Illinois because it "knowingly ... d[id] business with Illinois residents"). Indeed, when Defendant collected Plaintiff's facial biometrics here, it knew it was interacting with an individual located in Illinois based on her Illinois IP address and geolocation tracking technology (FAC ¶ 28). Rather than dispute Plaintiff's clear allegations, Defendant largely sidesteps them and suggests that the only connection between Defendant and Illinois is Plaintiff and that her allegations only concern "ephemeral alleged contacts" in Illinois through third parties (Mot. at 7-8). Plaintiff's straightforward allegations set forth above demonstrate the opposite.

Unlike in *Gutierrez v. Wemagine.AI LLP*, where the plaintiff only alleged that the defendant's technology was "available and used by Illinois residents", 2022 WL 252704 at *3 (N.D. Ill. Jan. 26, 2022), Plaintiff's Complaint here alleges Defendant's direct and recurring targeting of Illinois in various forms. (FAC ¶ 22-24). Defendant also cites *Bray v. Lathem Time Co.*, No. 19-cv-3157, 2020 WL 1492742 (C.D. Ill. Mar. 27, 2020), where a biometric vendor submitted evidence that it had sold and shipped the biometric devices at issue to Arkansas customers, and then the devices were subsequently brought into Illinois *without its knowledge*. *Bray*, 2020 WL 1492742 at *3. Here, in contrast, Plaintiff alleges Defendant provided its biometric verification platform to businesses, including Roblox, which Defendant *knows* operate in Illinois (which Defendant does not, and cannot, dispute). Similarly, in *Salkauskaite v. Sephora USA, Inc.*, No. 18-cv-08507, 2020 WL 2796122 (N.D. Ill. May 30, 2020), the court found personal jurisdiction lacking because, following jurisdictional discovery, the evidence demonstrated that the defendant biometric technology vendor, a Canadian entity, did not deploy its technology to Illinois, have employees located in Illinois, or use location-tracking technology. *Salkauskaite*, 2020 WL 2796122 at *4-5. Here, unlike the vendor in *Salkauskaite* Defendant does not dispute that it actively markets its platform in Illinois, that Defendant has multiple clients – including Roblox – who it knows do business in Illinois, and that Defendant can determine from its location-tracking software when it is collecting biometric data from Illinois residents such as Plaintiff. For similar reasons, *McGoveran v. Amazon Web Servs.*, Inc., 488 F. Supp. 3d 714 (S.D. Ill. 2020), is inapposite as well. There, the court found personal jurisdiction lacking because the claims arose from phone calls the plaintiffs made from Illinois to a Massachusetts-based non-party, such that the defendants never "reached into Illinois" and never specifically "specifically targeted Illinois citizens." *McGoveran*, 488 F. Supp. 3d at 722-23. Here, on the other hand, Plaintiff alleges (and

Defendant does not dispute) that Defendant has purposefully marketed its platform in Illinois, and knows precisely when its platform interacts with Illinois residents.

Furthermore, the fact that its clients doing business in Illinois played *some* role in creating contacts between Defendant's technology and Illinois "doesn't necessarily make those contacts independent or attenuated, either" because Defendant "itself set the system up this way." *King v. PeopleNet Corp.,* 21-cv-2774, 2021 WL 5006692, at *7 (N.D. Ill. Oct. 28, 2021) (quoting *uBID, Inc.,* 623 F.3d at 428*); see also Crumpton v. Haemonetics Corp*., 21 C 1402, 2022 WL 952744, at *7 & *8 (N.D. Ill. Mar. 30, 2022) ("Even if Haemonetics did not directly send the software to Illinois (an issue not clarified by the parties), its own actions in obtaining the exclusive arrangement ensured that Illinois donation centers—of which Haemonetics was well aware—deployed that software.").

Plaintiff's claims also arise from Defendant's Illinois-directed contacts and expansive efforts to make its biometric identity verification service available in Illinois. Defendant's argument that the presence of "National Sale Executives" in Chicago are not connected to Plaintiff's BIPA claims (which Defendant does not support with any evidence) is  therefore unavailing. (Mot. at 9). As Defendant's platform relies on collecting consumers' biometrics in order to verify their ages and identities, including those of Illinois residents, Defendant's ubiquitous contacts with the Illinois marketplace is directly tied to Plaintiff's BIPA claims.  (FAC ¶¶ 26, 28). Indeed, in its recent decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), the Supreme Court confirmed that specific personal jurisdiction attaches where, as here, "a company like [Defendant] serves a market for a product in the forum State and the product" inflicts injury there. *Id.* at 1027. Here, as in *Ford Motor Co.*, Plaintiff has suffered injury in Illinois because of the identity-verification platform that Defendant "extensively promoted, sold,

and serviced in" Illinois, such that her claims' connection to Defendant's Illinois-targeted conduct "is close enough to support specific jurisdiction." *Id.* at 1032.

Thus, having established Defendant's purposeful availment and claim-related contacts, the remaining question is whether subjecting Defendant to this Court's jurisdiction would offend traditional notions of fair play and substantial justice. As long as the plaintiff has made a "threshold showing of minimum contacts," that showing is generally only defeated if the defendant presents a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Curry*, 949 F.3d at 402 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Here, Defendant offers zero considerations which would render jurisdiction unreasonable. Accordingly, because Plaintiff makes a *prima facie* showing of personal jurisdiction, and Defendant has failed to rebut any of Plaintiff's well-pled allegations, this Court should reject Defendant's challenge to personal jurisdiction.[1]

### B. Plaintiff Sufficiently Alleges That Defendant's BIPA Violations Occurred In Illinois.

Plaintiff alleges that she is an Illinois resident (FAC ¶ 18) who – while in Illinois – provided documentation and a photograph of her fact to Defendant while registering for its client Roblox's developers program (*Id.* ¶ 26), which was integrated with Defendant's identity-verification platform (*Id.* ¶ 27). Thus, Plaintiff had to upload her school identification document and a "selfie" to Defendant's platform in Illinois (*Id.*), upon which Defendant extracted her facial biometrics (*Id.* ¶ 29). Plaintiff also alleges that Defendant collected the Illinois IP address and geolocation of the device Plaintiff used. (*Id.* ¶ 28). At the pleadings stage, when all factual allegations and reasonable

---

[1] In the alternative, to the extent the Court finds that Plaintiff has not set forth a *prima facie* case of specific personal jurisdiction, Plaintiff submits that she has at minimum presented a "colorable" case of personal jurisdiction, and requests leave to conduct limited jurisdictional discovery. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted").

inferences stemming from those allegations must be construed in Plaintiff's favor, these allegations are sufficient to plausibly allege that Defendant's BIPA violations, including its failure to obtain Plaintiff's consent to biometric collection and dissemination, occurred primarily and substantially in Illinois. Indeed, by alleging the exact steps Defendant took to collect Plaintiff's biometric data (scraped off her school identification document) while she was in Illinois, Plaintiff shows a closer connection between Defendant's conduct and Illinois than the plaintiffs did in *In re Clearview AI, Inc., Consumer Priv. Litig.*, where the court rejected the defendants' motion to dismiss on extraterritorial grounds because the plaintiff alleged that they were "Illinois residents, the Clearview defendants failed to provide notice to the Illinois subclass members in Illinois, and defendants trespassed on the Illinois subclass members' private domains in Illinois." *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-cv-0135, 2022 WL 444135, at *4 (N.D. Ill. Feb. 14, 2022). And the *Clearview* court is far from the only court in this Circuit to have held that purported extraterritoriality defenses should generally not be resolved at the pleadings stage, and instead should be left for the summary judgment stage following discovery. For instance, in *Rivera v. Google Inc*., Judge Chang found that the plaintiffs' allegations that the defendant extracted biometric data from pictures uploaded by Illinois citizens using Illinois IP addresses while in Illinois were enough to "tip toward a holding that the alleged violations primarily happened in Illinois," permitting the plaintiffs to proceed with discovery. *Rivera v. Google Inc*., 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017); *see also Mahmood v. Berbix, Inc.*, 22-cv-2456, 2022 WL 3684636, at *2 (N.D. Ill. Aug. 25, 2022) (denying motion to dismiss based in part on the extraterritoriality doctrine); *Vance v. Int'l Bus. Machines Corp*., No. 20-cv-577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) (rejecting extraterritoriality defense at the pleadings stage because the defense requires a "highly fact-based analysis that is generally inappropriate for the motion to dismiss");

*Patel v. Facebook*, 932 F.3d 1264, 1276 (9th Cir. 2019) ("[I]t is reasonable to infer that the [Illinois] General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state").

Defendant's argument to the contrary relies on an unreasonable misreading of the Complaint. Defendant pretends that all Plaintiff has alleged is her residency, (Mot. at 11), when she clearly alleges she accessed Roblox, and thus connected to Defendant's identify-verification platform, while she was in Illinois. (FAC ¶¶ 26-29). Thus, the various cases Defendant cites where courts held that the plaintiff's residence cannot be the sole nexus between the unlawful conduct and Illinois are inapposite. Defendant's heavy reliance on an out of Circuit decision, *McGoveran v. Amazon Web Servs., Inc.*, No. 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021), is also inapposite, because in that case the plaintiffs did not "allege any direct interaction with [the defendants] that might plausibly be imputed to Illinois." 2021 WL 4502089 at *5. Here, in contrast, Plaintiff sufficiently alleges that she directly interacted with Defendant, and Defendant collected her biometric data, while she was in Illinois. For those reasons, the Court should reject Defendant's extraterritoriality argument absent discovery.[2]

### C. Plaintiff Adequately Alleges That Defendant Profits Directly From Biometrics In Violation Of Section 15(c).

Section 15(c) of BIPA provides that, "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Defendant violated

---

[2] Defendant also argues in a footnote that applying BIPA to Defendant's conduct violates the Dormant Commerce Clause. This argument – to the extent the Court considers it – is unavailing for the same reasons as Defendant's extraterritoriality argument. *Mahmood*, 2022 WL 3684636, at *2 (rejecting identity-verification vendor's Dormant Commerce Clause argument because the plaintiff "plausibly alleged [the vendor's] BIPA violations occurred primarily and substantially in Illinois, therefore, the violations did not take place 'wholly outside' of Illinois").

this section because, as Plaintiff directly alleges, Defendant is paid by its clients for access to Defendant's facial recognition and matching platform on a per-biometric-transaction basis. (FAC ¶ 33). In other words, biometrics are a necessary element of Defendant's profit model, supporting a claim that Defendant unlawfully generates profits resulting directly, and distinctly, from its collection and use of biometrics. *Flores v. Motorola Sols., Inc.*, No. 20-cv-01128, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021) (sustaining 15(c) claim because Section 15(c) prohibits incorporating biometrics as a "necessary element to [a] business model."); *Mahmood,* 2022 WL 3684636, at *2 ("[Plaintiff] has plausibly alleged [Defendant] violated § 15(c) because [Defendant's client] paid for access to [Defendant's] facial recognition platform to verify Mahmood's age and identity . . . In short, [Defendant's] collection and use of biometrics is a necessary component to its business model"); *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-CV-0135, 2022 WL 444135, at *8 (N.D. Ill. Feb. 14, 2022) (rejecting Defendant's argument that the statutory language "otherwise profit from" indicates that Section 15(c) prohibits only the sale of biometric data, and sustaining claim because "[a]t its core, [the] claim concerns the sale of biometric data because the Clearview defendants' business model is premised on collecting and capturing biometric data").

Plaintiff's claim is not, as Defendant wrongly suggests, a bald recitation of the statutory language. Rather, Plaintiff has satisfied her pleading burden under Fed. R. Civ. P. 8 by alleging precise facts (Defendant charges its clients on a per-biometric-verification basis) (FAC ¶ 51), which put Defendant on notice of how Plaintiff alleges Defendant violated Section 15(c). Further, BIPA's express purpose is, in part, to regulate the retention and destruction of biometrics, 740 ILCS 14/5(g), 14/10(a), and, as the Seventh Circuit has noted, discouraging companies from directly tying biometrics to profit-making furthers that purpose by disincentivizing them from

unnecessarily retaining that data. *See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021) ("If it is not profitable to collect or hold that [biometric] data, one can assume that the incentive to collect it or hold it will be significantly reduced"). For that reason, Defendant's reliance on the out-of-circuit decisions *Vance v. Microsoft Corp*. and *Vance v. Amazon.com Inc.*, which jumped to an *ejusdem generis* analysis instead of attempting to give effect to "otherwise profit," is misplaced. *Citizens Utilities Co. v. Illinois Com. Comm'n,* 50 Ill. 2d 35, 40 (1971) (the doctrine of ejusdem generis is "not a rule of mandatory application. It is only a rule of construction to aid in ascertaining and giving effect to the legislative intent, and cannot be applied to defeat the evident purpose of the statute.")

Accordingly, Plaintiff states a claim under Section 15(c) of BIPA.

### D. Plaintiff States A Claim Under Section 15(d).

Section 15(d) of BIPA prohibits the disclosure or dissemination of biometric identifiers or biometric information without a person's informed consent. See *Cothron v. White Castle Systems, Inc.*, 467 F. Supp. 3d 604, 613 (N.D. Ill. 2020) ("Section 15(d) requires entities to obtain a person's informed consent when disclosing or disseminating an individual's biometric data"). Defendant argues that Plaintiff's 15(d) claim fails as speculative and conclusory, but Plaintiff alleges that such data is stored by at least one "third party business partner for data storage and redundancy purposes." (FAC ¶ 49). In other words, Plaintiff's Section 15(d) claim does not "parrot" the statutory language, and Defendant is on notice of precisely how Plaintiff alleges it violated Section 15(d).

In any event, Defendant's own online Privacy Policy confirms that it shares personal information, such as biometrics, with third parties. *See Privacy Policy*, IDOLOGY, https://www.idology.com/privacy-policy/ (last accessed September 15, 2022) ("We [Defendant]

will share Personal Data with companies, organizations or individuals outside of IDology when we have your consent to do so").[3] While the policy suggests that Defendant would obtain consent before disclosing Plaintiff's sensitive biometrics to third parties, it failed to do so. In other words, Plaintiff should not be penalized for her inability to allege *exactly* which third parties Defendant disclosed her data to, because Defendant failed to inform her as Section 15(d) requires. *Endo v. Albertine*, 812 F. Supp. 1479, 1497 (N.D. Ill. 1993) ("Plaintiffs need not allege facts which are in the exclusive knowledge or control of the defendants"). Defendant is free to dispute the accuracy of these allegations during discovery, but at this stage, Plaintiff's allegations are sufficient to state a Section 15(d) claim.

### E. Plaintiff's Damages Allegations Are Sufficiently Pled At This Stage Of The Pleadings.

Defendant also requests that the Court strike Plaintiff's request for heightened damages under 740 ILCS 14/20(2), arguing that the Complaint lacks sufficient facts to infer that Defendant's BIPA violations were reckless or intentional. But as the majority of courts in this Circuit have held, a request for enhanced damages under 740 ILCS 14/20(2) is a demand for relief, and not part of a BIPA claim. *See Mahmood*, 2022 WL 3684636, at *3 (N.D. Ill. Aug. 25, 2022) ("[Plaintiff] need not allege a specific level of culpability to plausibly state her BIPA claims because the Act imposes liability regardless of a defendant's state of mind"); *Horn v. Method Prod., PBC*, No. 21 C 5621, 2022 WL 1090887, at *2 (N.D. Ill. Apr. 12, 2022) ("Rule 8 does not require a plaintiff to plead damages with particularity and instead only requires 'a demand for the relief sought'"); *Sosa v. Onfido, Inc*., No. 20-cv-4247, 2022 WL 1211506, at *10 (N.D. Ill. Apr.

---

[3] While Defendant's Privacy Policy is not directly cited in Plaintiff's Complaint, facts raised in an opposition brief "may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint." *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) (citing *Dausch v. Rykse*, 52 F.3d 1425, 1428 n.3 (7th Cir. 1994)) (other citations omitted).

25, 2022) ("[plaintiff] need not allege a specific level of culpability to plausibly state her BIPA claims because the Act imposes liability regardless of a defendant's state of mind").

Regardless, courts in this Circuit have consistently held that a defendant's failure to comply with BIPA for *over a decade* after its passage in 2008 (FAC ¶ 54) plausibly infers that the defendant's violations were reckless or intentional. *See, e.g., Karling v. Samsara Inc.*, No. 22-cv-295, 2022 WL 2663513, at *7 (N.D. Ill. July 11, 2022) (sustaining enhanced statutory damages request where the plaintiff alleged "that BIPA was enacted over a decade ago and Samsara has made no effort to comply"); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19-cv-2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) ("[B]y alleging that [Defendant] has made no effort to comply with BIPA, [Plaintiff] has pleaded facts to suggest Bimbo acted with negligence, recklessness, or intent."); *Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20-cv-3200, 2020 WL 7490414, at *7 (N.D. Ill. Dec. 21, 2020) ("The complaint's allegation that in 2016, "defendants knew, or were reckless in not knowing" that the timekeeping system was subject to BIPA's requirements is plausible . . . Yet defendants made no effort to comply with BIPA. This is enough to allege a negligent, reckless, or intentional violation"); *Rogers v. BNSF Ry. Co.*, No. 19- cv-3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("[T]he BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage— BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible"); *Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20-cv-3200, 2020 WL 7490414, at *7 (N.D. Ill. Dec. 21, 2020) ("The complaint's allegation that in 2016, "defendants knew, or were reckless in not knowing" that the timekeeping system was subject to BIPA's requirements is plausible . . . Yet defendants made no effort to comply with BIPA. This is enough to allege a negligent, reckless, or intentional

violation"). Further, Plaintiff's Complaint also alleges that Defendant advises prospective clients about privacy laws and regulations such as the California Consumer Privacy Act and the European Union's General Data Protection Regulation. (FAC ¶ 34). Thus, Defendant knows that its collection of sensitive personal information such as biometrics subjects it to privacy laws like BIPA, rendering its violations even more egregious.

In short, Plaintiff's allegations are more than sufficient to plausibly infer that Defendant acted recklessly or intentionally. Thus, Defendant's request that the Court strike Plaintiff's request for heightened damages at this stage of the litigation should be denied.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff R.S., by and through her Guardian Sarah Dover, respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.[4]

Dated: September 15, 2022                Respectfully submitted,

                                         R.S., a Minor, by and through her Guardian
                                         SARAH DOVER, individually and on behalf of
                                         similarly situated individuals

                                         By:    /s/ Timothy P. Kingsbury
                                                *One of Plaintiff's Attorneys*

Timothy P. Kingsbury
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
tkingsbury@mcgpc.com
aheldut@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

---

[4] Should the Court grant Defendant's Motion in whole or in part, Plaintiff requests that any such dismissal be made without prejudice to provide Plaintiff with an opportunity to correct any curable defects in her pleading.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 15, 2022, I caused the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.


<u>/s/ Timothy P. Kingsbury</u>

16