**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| R.S., a Minor, by and through her Guardian SARAH DOVER, individually and on behalf of all similarly situated individuals,<br><br>    Plaintiff,<br>vs.<br><br>IDOLOGY, INC., a Georgia corporation,<br><br>    Defendant. | Case No. 22-cv-03479 |

**DEFENDANT IDOLOGY INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

**I. INTRODUCTION**

As set forth in the Motion to Dismiss First Amended Class Action Complaint ("Motion"), this case presents a single claim under the Illinois Biometric Information Privacy Act ("BIPA") against IDology Inc. ("IDology"). The minor plaintiff, known only as R.S. ("Plaintiff"), seeks to invoke this Court's jurisdiction over IDology—a company organized and headquartered in Georgia (ECF 14 ¶¶ 17 & 22)—because she "upload[ed] her school identification documents and a 'selfie photograph'" to IDology's "biometrically-enabled Application Programming Interface (or 'API')" while registering with a third party to develop games on its platform. *Id.* ¶¶ 21 & 27. Plaintiff alleges that IDology "collected, stored and analyzed Plaintiff's facial geometry" for identity verification purposes while disregarding certain of BIPA's requirements. *Id.* ¶ 29.

IDology moved to dismiss for lack of personal jurisdiction and Plaintiff's failure to state a claim. Although Plaintiff filed an Opposition, it fails to provide the Court with a viable basis to deny the Motion. Most fundamentally, Plaintiff fails to carry her burden to support the Court's power to exercise personal jurisdiction over IDology—a defect that the Opposition does not, and

cannot, remedy. To the contrary, Plaintiff effectively concedes that this Court lacks general, all-purpose jurisdiction over IDology. *See* ECF 21 at 3 (contending only that "this Court has specific personal jurisdiction over Defendant"). As to specific jurisdiction, Plaintiff fails to carry her burden to demonstrate IDology's purposeful availment of forum benefits or that her claim arises from or relates to its forum contacts. Instead, she focuses on her own conduct, activities by IDology that do not target Illinois, and alleged forum contacts that do not relate to her lawsuit.

Aside from the lack of jurisdiction, Plaintiff fails to plead a viable BIPA claim, and that omission provides an independent basis for dismissal. As the Motion discussed, Plaintiff's interpretation of BIPA would extend the statute's scope outside of Illinois in a manner inconsistent with the clear intent of the Illinois General Assembly that it not have extraterritorial effect. *See* ECF 16 at 10-11. Plaintiff separately fails to state a claim under Sections 15(c) and 15(d) of BIPA as the allegations in her First Amended Complaint ("FAC") do not plead that IDology either profited from biometric data or impermissibly disseminated biometric data to third parties. *See* ECF 16 at 11-14. The FAC's failure to include factual allegations to support plausible BIPA claims also requires striking Plaintiff's prayer for heightened damages. *See* ECF 16 at 14-15.

Rather than address these points, the Opposition mischaracterizes IDology's arguments and advances assertions and legal theories untethered to the FAC. The Opposition also includes a cursory request for leave to amend if the Court denies the Motion. As this is Plaintiff's second failed attempt to plead a viable claim, the Court should dismiss the case with prejudice.

**II.    THE FAC FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED.**

    **A.    Plaintiff Has Failed to Demonstrate that this Court Has Personal Jurisdiction Over IDology—A Fatal Defect that the Opposition Does Not Remedy.**

Plaintiff admits the Court's lack of general jurisdiction over IDology. *See* ECF 21 at 3. This concession leaves for the Court's resolution whether it may exercise specific jurisdiction over

IDology based on Plaintiff's argument that IDology "market[ed] its biometric verification technology to customers who it knows do business in Illinois." ECF 21 at 3. The answer is no. "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a *substantial* connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphases added).

In this case, Plaintiff's allegations do not identify any suit-related conduct by IDology, let alone substantial suit-related conduct. Instead, the FAC alleges IDology violated BIPA when *Plaintiff*—residing in Illinois—accessed the Internet or mobile application of Roblox (a third party not joined in this suit) to register as a developer of video games on its platform. ECF 14 ¶¶ 26-27. The FAC further alleges that this forum conduct by *Plaintiff* triggered identity verification software—integrated into the Roblox platform—that had been developed by IDology. *Id.* ¶¶ 17, 22. Although the FAC alleges that IDology has clients such as Roblox with an Illinois presence, *id.* ¶ 22, Plaintiff concedes that these clients operate nationwide. *Id.* ¶ 24. Thus, Plaintiff's registration with Roblox in Illinois—including her act of uploading an image of her school identification card and a "selfie," from which, she alleges, IDology software processed her biometric data, *id.* ¶¶ 26-28—fails to establish this Court's specific jurisdiction over IDology.

Plaintiff's citation to *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), does not alter this conclusion. Indeed, the differences between the facts of that case and this one reinforce this Court's lack of specific jurisdiction over IDology. One major difference is that the nonresident defendant in *Ford* conceded its purposeful availment of each forum's benefits. *See id.* at 1026 ("Ford agrees that it has 'purposefully availed itself of the privilege of conducting activities' in both places."); *id.* at 1028 ("Ford has here conceded 'purposeful availment' of the two States' markets."). The Court sarcastically mused that this concession was a "[s]mall wonder"

in light of the inescapable reality that the defendant had engaged in forum conduct "[b]y every means imaginable," including extensive advertising through numerous marketing channels, sales throughout the state, and aftermarket services such as maintenance, repair and the distribution of replacement parts—all with respect to "the very vehicles that the plaintiffs allege malfunctioned and injured them in those States," even though they were purchased elsewhere. *Id.* at 1028. The FAC in this case alleges no similar circumstances.

Moreover, the admission of the defendant in *Ford*—and the realities compelling it—so narrowed the scope of the jurisdictional inquiry before the Court that "[t]he only issue [wa]s whether those contacts are related enough to the plaintiffs' suits" to invoke specific jurisdiction. *Id.* at 1031. As highlighted in the Motion, although the *Ford* Court approved of the exercise of jurisdiction on the record before it, the Court's opinion "re-emphasizes the Constitution's 'real limits' on the jurisdictional significance of perceived connections between a nonresident defendant's forum contacts and a plaintiff's claims." ECF 16 at 4 (citation omitted).

The other cases cited by Plaintiff also confronted circumstances markedly different from this case. In *King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 U.S. Dist. LEXIS 207694, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021), for example, the plaintiff alleged multiple direct ties between the defendant and the forum. These included that: (1) "defendant did business with [Illinois employers, including Plaintiff's], presumably by entering into contracts with them," (2) "[defendant] shipped devices to [Illinois] and has provided services to [Plaintiff's] employer for at least fifteen years," and (3) "defendant's business here centered on scanning Illinois employees' biometric information and handling the resulting data." *Id.* at *14. In *Crumpton v. Haemonetics Corp.*, No. 21 C 1402, 2022 U.S. Dist. LEXIS 58354, 2022 WL 952744 (N.D. Ill. March 30, 2022), also cited by Plaintiff, the defendant had an exclusive arrangement with a third party that operated

multiple physical locations in Illinois for the purpose of storing Illinois residents' data for the defendant. *See id.* at \*26. The Plaintiff in this case alleges only her own *indirect* interaction with IDology by effectively triggering its API embedded in the Roblox platform.

Indeed, the instant case is much more similar to *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 U.S. Dist. LEXIS 6958, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016). In that case, an Illinois citizen alleged Facebook had violated BIPA when it obtained the plaintiff's biometric data from a photograph of the plaintiff that was uploaded to Facebook. Despite the plaintiff's allegations that Facebook was "registered to do business" and "ha[d] a sales and advertising office" in Illinois, the court rejected these contacts because they "ha[d] no relationship to this suit." 2016 U.S. Dist. LEXIS 6958, at \*5. Moreover, the court rejected plaintiff's allegation that Facebook had "target[ed] its facial recognition technology to millions of users who are residents of Illinois," because it contradicted the plaintiff's allegations that "Facebook use[d] facial recognition technology on '*every* user-uploaded photo.'" *Id.* (emphasis added). "Given this tacit admission that Facebook's alleged collection of biometric information is not targeted at Illinois residents, the third 'contact' becomes simply that Facebook operates an interactive website available to Illinois residents." *Id.* The court therefore dismissed the plaintiff's claims.

The Plaintiff in this case is in an even weaker position, as she alleges no direct interaction with IDology. Setting that difference aside, just like the plaintiff in *Gullen*, Plaintiff alleges just three forms of contacts between IDology and the forum: (1) some "National Sales Executives" reside within the State, (2) they "regularly attend promotional and marketing conferences in Chicago," ECF 21 at 5 (citing ECF 14 ¶ 23), and (3) "Defendant incorporates its identity-verification platform into its clients' mobile or internet-based applications . . . clients that Defendant knows do business in Illinois," and as depicted on a map. ECF 14 ¶¶ 22 & 24.

As an initial matter, the mere fact that some sales executives reside in Illinois and attend conferences in Chicago is irrelevant to the specific jurisdiction inquiry, as the place of residence of employees and the location of conferences they attend has nothing to with Plaintiff's claims. Further, Plaintiff identifies just two conferences, and neither of them appears to be centered on marketing. These conferences are also temporally irrelevant to Plaintiff's allegations, as she alleges that she registered with Roblox "between 2018 and 2019," while the conferences occurred in 2015 and 2022. ECF 14 ¶ 25. More fundamentally, Plaintiff does not allege that her interactions with IDology involved the purportedly local sales executives in any way. The map included in her pleading separately demonstrates that IDology's services are offered throughout the United States, and are not exclusively limited or targeted to Illinois.

In short, these facts do not support the Court's exercise of specific personal jurisdiction over IDology. *See Gullen*, 2016 U.S. Dist. LEXIS 6958, at *7 ("[T]he fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook."); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (cautioning courts "in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state") (quoting *Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010)).

Because Plaintiff fails to address either *Gullen* or *Matlin*—both of which the Motion cited and discussed—she concedes the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Duthie v. Matria Healthcare, Inc.*, 535 F. Supp. 2d 909, 916 (N.D. Ill. 2008) ("Generally, a party's failure to respond to an opposing party's argument implies concession."). Regardless, the cases Plaintiff advances to urge a different result focus principally on purposeful availment and additionally predate all of the

Supreme Court's most recent pronouncements narrowing the scope of personal jurisdiction. *See, e.g.*, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) and *Hemi Grp. LLC*, 622 F.3d at 758.

As the Motion explains, even if a defendant has purposefully availed itself of forum benefits, the record must also satisfy the Court that the plaintiff's claims arise from or relate to the defendant's contacts with the forum, and that the exercise of jurisdiction over the defendant is consistent with traditional notions of fair play and substantial justice. *See* ECF 16 at 4-5. Plaintiff fails to allege facts that her claims plausibly arise from or relate to IDology's forum conduct. *See* ECF 16 at 6-9. The Court thus lacks jurisdiction over IDology and should dismiss the Complaint.

The Court should likewise deny Plaintiff's alternative request that she be permitted to conduct jurisdictional discovery. *See* ECF 21 at 8 n.1. To trigger that right, Plaintiff must at least demonstrate a "colorable" basis for exercising personal jurisdiction. *See, e.g., Brown v. Swagway*, No. 3:15-cv-588-JVB-CAN, 2016 U.S. Dist. LEXIS 200588, at *5 (N.D. Ind. Aug. 2, 2016) (denying motion and observing that "jurisdictional discovery should be denied where a plaintiff's motion is based on bare, attenuated, or unsupported assertions of personal jurisdiction"); *see also, e.g., Medline Indus. v. Diversey, Inc.*, No. 20 C 4424, 2020 U.S. Dist. LEXIS 177579, at *13-14, 2020 WL 5763637 (N.D. Ill. Sept. 28, 2020) (granting motion to dismiss and denying jurisdictional discovery because plaintiff "failed to establish a colorable basis for personal jurisdiction"); *Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 783 (N.D. Ill. 2009) ("[Plaintiff] has provided the Court with nothing more than its unsupported suspicion that [defendant] is involved with [website]. Because [plaintiff] has provided nothing but its unsupported assertion of personal jurisdiction over [defendant], its request for jurisdictional discovery is denied."). But no authority supports doing so on the record before the Court.

Indeed, even *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000), a case touted by Plaintiff, does not support her position. In that case, the court "conclude[d] that the district court did not abuse its discretion in denying the [plaintiff's] request for discovery into whether [the defendants] are subject to the personal jurisdiction of the court." *Id.* at 947. Jurisdictional discovery is properly denied if a plaintiff "does not explain what discovery [she] seeks" that would "allow the court to exercise personal jurisdiction." *Std. Process, Inc. v. KDealz Ltd. Co.*, No. 17-cv-909-jdp, 2018 U.S. Dist. LEXIS 53740, at *3, 2018 WL 1583303 (W.D. Wis. March 30, 2018) (quotation and alteration omitted). Plaintiff fails to do these things, and the Court should therefore decline her request.

### B. The Opposition Confirms that Plaintiff has Failed to State a BIPA Claim Pursuant to Any Provision of BIPA.

#### 1. Contrary to the Opposition's Representations, Plaintiff Seeks An Improper Extraterritorial Application of BIPA.

As explained in the Motion, the FAC advances an interpretation of BIPA that would impermissibly extend outside of Illinois. Rather than confront and attempt to grapple with this reality, Plaintiff's Opposition represents, inaccurately, that the FAC alleges Plaintiff "had to upload her school identification document and a 'selfie' to Defendant's platform in Illinois." ECF 21 at 8 (citing ECF 14 ¶ 27). But IDology has no platform in Illinois and the FAC does not allege otherwise. Instead, the FAC alleges only that *Plaintiff* was located in Illinois when she "upload[ed] her school identification documents and a 'selfie' photograph to Defendant's identity verification API"—an application programming interface—which is "incorporate[d]" into the platform of third-party "Roblox," with which she "registered." ECF 14 ¶¶ 22, 26 & 27. As articulated more fully in the Motion, a plaintiff's residency "is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." ECF 16 at 11 (quoting

*McGoveran v. Amazon Web Servs., Inc.*, No. 20 CV 1399, 2021 U.S. Dist. LEXIS 189633, at *3, 2021 WL 4502089 (D. Del. Sep. 30, 2021)).

Plaintiff attempts to recast the facts by emphasizing that IDology "*collected* the Illinois IP address and geolocation of the device Plaintiff used." ECF 21 at 8 (citing ECF 14 ¶ 28) (emphasis added). But that allegation fails to address *where* IDology took this step. Although the next paragraph somewhat ambiguously avers that "Defendant collected, stored, and analyzed Plaintiff's facial geometry in Illinois" (ECF 14 ¶ 29)—leaving unclear whether IDology allegedly did each of these things in Illinois or simply indicates the initial location of the data—Plaintiff premises all her factual allegations on "information and belief" (*id.*, Prefatory Statement), rendering it speculative. Plaintiff contends that she has provided more detailed allegations than those deemed sufficient in *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-cv-0135, 2022 U.S. Dist. LEXIS 25859, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022). In truth, the allegations in that case—including the charge that "defendants trespassed on the Illinois subclass members' private domains in Illinois," *id.* at *10—were far more detailed and specific.

Even in *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017), which Plaintiff cites to support her request for jurisdictional discovery, the court clarified that BIPA "was not intended to and does not have extraterritorial application." *Id.* at 1104. The *McGoveran* court also found *Rivera* distinguishable on its facts because the plaintiffs' allegations that "that photos of [plaintiffs] were taken in Illinois using Google Droid devices, that the photos were automatically uploaded to the Google Photos application from Illinois, and that Google performed scans of their faces" established a "direct interaction between the plaintiffs and the defendants, and the allegations suggested that a good amount of the relevant conduct could be attributable to Illinois." *McGoveran*, 2021 U.S. Dist. LEXIS 189633, at *13-14. Reciting facts more like those before this

Court, the *McGoveran* court granted a defendant's motion to dismiss because, in contrast with *Rivera*, "Plaintiffs never interacted directly with [defendants] from Illinois, and the Defendants' conduct cannot be fairly attributed to Illinois. Indeed, Plaintiffs have not meaningfully alleged that anything happened in Illinois other than Plaintiffs dialing their phones." *Id.* at *14. Because the same is true here, this Court should follow *McGoveran* and others that have dismissed BIPA claims. *See, e.g.*, *McGoveran*, 2021 U.S. Dist. LEXIS 189633, at *3; *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 755 (N.D. Ill. 2008) (granting motion to dismiss in part where only contacts alleged with Illinois were plaintiffs' residency in forum); *Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, No. 07 C 3371, 2013 U.S. Dist. LEXIS 45112, at *22, 2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) (dismissing claim where case had "weak connection to Illinois" even though plaintiff resided there).[1]

### 2. Plaintiff Fails to State a Claim Under BIPA Sections 15(c) and 15(d).

The Motion explains that the FAC fails to allege a plausible violation of Section 15(c) of BIPA because it lacks a clear allegation that "access to biometric data is <u>shared or given to another</u>," and "<u>in return for that access</u>, the entity receives something of value." ECF 16 at 10-11 (quoting *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021)). The Opposition does not, and cannot, cure the FAC's failure to plead these elements of a 15(c) claim. Indeed, the Opposition only reemphasizes that the FAC fails to allege that IDology profits from biometric data. The FAC alleges "on information and belief" that IDology "is paid by its clients

---

[1] For the same reasons, as noted in the Motion, the extraterritorial application of BIPA that Plaintiff seeks would also violate the Dormant Commerce Clause given that Georgia—where IDology is incorporated—has not enacted a comprehensive biometric privacy bill as Illinois has. *See* ECF 16 at 11 n.4. *Mahmood v. Berbix, Inc.*, No. 22 C 2456, 2022 U.S. Dist. LEXIS 153010, 2022 WL 3684636 (N.D. Ill. Aug. 25, 2022) is distinguishable, as in that case the plaintiff "plausibly alleged [defendant's] BIPA violations occurred primarily and substantially in Illinois"—which, as explained above, Plaintiff has failed to do. *See* ECF 21 at 10 n.2; *see also* 2022 U.S. Dist. LEXIS 153010, at *5.

for access to Defendant's facial recognition and matching platform on a per-biometric-transaction basis," ECF 21 at 11 (citing ECF 14 ¶ 33); *see also* ECF 21 at 11 (arguing that "Defendant charges its clients on a per-biometric-verification basis," failing to allege any precise facts relating to biometric information or identifiers). However, because the first page of Plaintiff's pleading concedes that her "information and belief" allegations are unaccompanied by "the grounds for h[er] suspicions," the Court should reject these assertions as failing to plead a viable claim. *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 684 (7th Cir. 1992). Regardless, the FAC lacks any allegation that IDology's clients paid to obtain the biometric data that is allegedly "a necessary element of Defendant's profit model." ECF 21 at 11; *see also* ECF 16 at 13.

The cases Plaintiff cites to support her 15(c) claim are all distinguishable from her own case. For example, in *Mahmood*, the court found that a plaintiff had plausibly alleged a 15(c) violation because plaintiff alleged that "[defendant's client] paid for access to [defendant's] facial recognition platform to verify [plaintiff's] age and identity before she rented a car." 2022 U.S. Dist. LEXIS 153010, at *6. In contrast, Plaintiff here does not allege that any specific client used IDology's platform for any specific purpose. Similarly, *In re Clearview AI, Inc., Consumer Priv. Litig.* involved detailed allegations that "defendants sold access to the[ir biometric] database to more than 200 private companies who searched the biometric database for their business purposes." 2022 U.S. Dist. LEXIS 25859, at *21. Again, Plaintiff makes no similar allegations.

*Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021), cited by Plaintiff, is similarly distinguishable. The plaintiffs in that case alleged that the defendant had offered access to its database for a fee, and would directly share biometric information with those who paid for access. *Id.* at 1243 (describing how defendant "creates a digital facial scan of the person in the photograph and compares the new facial scan to those in its vast database. If it finds a match, it returns a

geotagged photograph (not the facial scan) to the user, and it informs the user of the source social-media site for the photograph"). The FAC does not include any similar allegations, and this omission renders Plaintiff's 15(c) claim is subject to dismissal.[2]

The same is true for Plaintiff's Section 15(d) claims. Plaintiff's sole allegation, likewise made "upon information and belief," is that "[biometric] data is stored by at least one 'third party business partner for data storage and redundancy purposes.'" ECF 21 at 12 (citing FAC ¶ 49). This averment fails to plausibly state a claim under Section 15(d). Like the allegations in *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 U.S. Dist. LEXIS 139668, 2021 WL 3172967 (N.D. Ill. July 27, 2021) that were found to be insufficient, "Plaintiff has not presented any legitimate reason to suspect that defendant disclosed [her] biometric data or that of the putative class members," and Plaintiff should not be permitted to hide behind an allegation "on information and belief" where there are "no allegations of fact which, if true, suggest there is any basis to even suspect that defendant disseminated the biometric data at issue." *Id.* at *9-11.

The Opposition relies heavily on material outside of the pleadings in support of Plaintiff's 15(d) claim, which the Court should disregard. *See* ECF 21 at 12-13 (citing website not contained in the pleadings); *see, e.g.*, *Miller v. Pam Transp., Inc.*, No. 19-cv-242-JPG-GCS. 2019 U.S. Dist. LEXIS 174577, at *5 n.2, 2019 WL 4962954 (S.D. Ill. Oct. 8, 2019) ("The Court has disregarded the documents the plaintiffs have attached to their response, which constitute matters outside the pleadings that are not to be considered in a Rule 12(b)(6) motion."). Similarly, Plaintiff's entirely new allegation relating to IDology's privacy policy should be disregarded, because it raises a new

---

[2] Plaintiff argues that *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021) and *Vance v. Amazon.com Inc.,* 534 F. Supp. 3d 1314, 1322 (W.D. Wash. 2021) "jumped to an *ejusdem generis* analysis instead of attempting to give effect to 'otherwise profit.'" ECF 21 at 12. Plaintiff fails to explain *how* these decisions failed give effect to the term in light of their clear articulation of the statute "align[ing] with the legislative intent expressed in BIPA" to prohibit a reading of Section 15(c) so expansive that it would "lead to absurd results that contravene BIPA itself." *Microsoft Corp.*, 534 F. Supp. 3d at 1307-08.

basis for Plaintiff's Section 15(d) claim that could—and should—have been pleaded in the FAC, like many other materials Plaintiff cites. *See, e.g.*, ECF 14 ¶¶ 22-24 (citing online materials).

In an effort to evade these rules, Plaintiff cites case law that purportedly permits this Court to consider facts raised in an opposition brief "when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint." ECF 21 at 13 n.3 (citing *Gutierrez v. Peters*, 111 F.3d 1364 (7th Cir. 1997)). What Plaintiff fails to disclose is that the court decided *Gutierrez* in the context of considering the liberality afforded to "factual allegations contained in . . . court filings of a *pro se* plaintiff." 111 F.3d at 1367 n.2. This is a commonly observed exception to the rules of federal pleading that ordinarily control. *See also, e.g.*, *Myers v. Bennett*, No. 16-3267, 2017 U.S. Dist. LEXIS 164956, at *7, 2017 WL 4429768 (C.D. Ill. Oct. 4, 2017) (permitting consideration of statements outside of the complaint for *pro se* plaintiff); *Johnson v. Vanzant*, No. 3:21-CV-39-MAB, 2021 U.S. Dist. LEXIS 200836, at *7, 2021 WL 4864323 (S.D. Ill. Oct. 19, 2021) (similar). The Court should decline to consider Plaintiff's new allegations based on an inapplicable exception to well-established pleading standards.[3]

### 3. Plaintiff's Prayer for Heightened Damages Should be Stricken.

As explained more fully in the Motion, the FAC does not contain a single allegation that supports Plaintiff's prayer for heightened damages or the contention that IDology's actions were "knowing and willful, or at least reckless." ECF 14 ¶ 54. Plaintiff's hypothetical contentions about

---

[3] Even if the Court considers Plaintiff's new allegation, a review of IDology's Privacy Policy shows that it, too, supports dismissal of Plaintiff's Section 15(d) claim. As Plaintiff concedes, the Policy confirms that IDology shares "Personal Data" only "when we have your **consent** to do so." ECF 21 at 12-13 (emphasis added) (citing *Privacy Policy,* IDOLOGY, https://www.idology.com/privacy-policy/ (last accessed Sept. 23, 2022). Additionally, the Policy distinguishes between "Personal Data," which is "any information that identifies or can be used to identify you or a household," and "Sensitive Personal Data," which is a "smaller subset of Personal Data" that includes biometric information. *See id.* In contrast to Personal Data, the Policy contains no language regarding the collection, use, or dissemination of Sensitive Personal Data, indicating that IDology does not even collect this information—directly contradicting Plaintiff's unsupported allegation to the contrary. *See* ECF 21 at 12.

the timeframe BIPA has been in existence and the ways Plaintiff believes IDology should have complied with BIPA are insufficient to allow this Court to infer intent, recklessness, or negligence from IDology's alleged actions. Plaintiff admittedly cites a handful of cases opining that "a request for enhanced damages under 740 ILCS 14/20(2) is a demand for relief, and not part of a BIPA claim." ECF 21 at 13-14. IDology respectfully submits that this Court's holdings in *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) and *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) reflect a more reasonable interpretation of BIPA that should prevail in this case. *See Rogers*, 409 F. Supp. 3d at 618 (requiring that a plaintiff seeking heightened damages under BIPA "alleg[e] sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind"); *Namuwonge*, 418 F. Supp. 3d at 286 (similar).

    The interpretation of BIPA in these cases more closely aligns with the Supreme Court's requirement that a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face," and that those facts should "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Similarly, in alignment with *Namuwonge*, this Court should decline to hold that an allegation of a defendant's failure to comply with BIPA since the statute's enactment in 2008, without more, is not enough to infer recklessness or intentionality where a plaintiff "does not allege any substantive details regarding whether the allegations were reckless or intentional." *See* 418 F. Supp. 3d at 286. As the FAC does not contain any such allegations, Plaintiff's prayer for heightened damages is not warranted and should be stricken.

### III. CONCLUSION

For each of these reasons and those laid out in the Motion to Dismiss the First Amended Complaint, the Court should dismiss the FAC pursuant to either Federal Rule of Civil Procedure 12(b)(2) or Rule 12(b)(6).

**DATED**: September 29, 2022              */s/ Adam R. Fox*

**COZEN O'CONNOR**                          **SQUIRE PATTON BOGGS (US) LLP**

Jack J. Carriglio                           Adam R. Fox
Corey T. Hickman                            (*pro hac vice*)
COZEN O'CONNOR                              Hannah Makinde
123 N. Wacker Drive, Suite 1800             (*pro hac vice*)
Chicago, IL 60606                           555 S. Flower Street, Suite 3100
Telephone: (312) 474-7900                   Los Angeles, CA 90071
Facsimile: (312) 474-7898                   Tel.: (213) 624-2500
Jcarriglio@cozen.com                        Fax: (213) 623-4581
chickman@cozen.com                          Email: adam.fox@squirepb.com
                                                       hannah.makinde@squirepb.com

                                            Kristin Bryan
                                            (*pro hac vice*)
                                            1000 Key Tower
                                            127 Public Square
                                            Cleveland, OH 44114
                                            Tel.: (216) 479-8500
                                            Fax: (216) 479-8780
                                            Email: kristin.bryan@squirepb.com

                                            Christina Lamoureux
                                            (*pro hac vice*)
                                            2550 M Street NW
                                            Washington DC 20037
                                            Tel.: (202) 457-6000
                                            Fax: (202) 457-6315
                                            Email: christina.lamoureux@squirepb.com

                                            *Attorneys for Defendant,*
                                            *IDology, Inc.*

- 17 -

## CERTIFICATE OF SERVICE

I, Adam Fox, hereby certify that, on September 29, 2022, I caused to be filed the foregoing Defendant IDology, Inc.'s Motion to Dismiss the First Amended Class Action Complaint with the Court via the ECF System, it is available for viewing and downloading from the ECF system, and a true and correct copy was served to all counsel of record registered with the ECF system.

**SQUIRE PATTON BOGGS (US) LLP**

*/s/Adam Fox*
Adam Fox

*Attorney for Defendant,
IDology, Inc.*