IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| R.S., a Minor, by and through her Guardian SARAH DOVER, individually and on behalf of all similarly situated individuals,<br><br>           Plaintiff,<br>vs.<br><br>IDOLOGY, INC., a Georgia corporation,<br><br>           Defendant. | Case No. 22-cv-03479 |

**DEFENDANT IDOLOGY INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**

Having learned in discovery that "Plaintiff R.S. is *not* amongst the Roblox developers" whose identifying information IDology verified, ECF No. 52 at 3 (emphasis added), Plaintiff's ***counsel*** now seeks leave to amend the complaint to replace Plaintiff with two entirely new putative class representatives. But the proposed amendments go much further than suggested replacements of these new individuals for Plaintiff in the operative complaint. Indeed, gone is any mention of Roblox; the new proposed plaintiffs are alleged to have interacted with two entirely distinct corporate entities—"Lyft" and "PointsBet." *E.g.*, ECF No. 52-1, ¶¶ 26, 33. The Court should reject the proposed amended complaint because it is untimely, futile, and would unduly prejudice Defendant IDology by taking this litigation in an entirely new direction and forcing IDology to defend claims that are time barred. The Court should instead simply dismiss the complaint.

Making this motion all the more egregious, Plaintiff's counsel's knew when they filed this lawsuit that IDology was not a proper defendant for Plaintiff's Biometric Information Privacy Act ("BIPA") claims arising from her alleged interaction with Roblox. Indeed, several months before bringing this lawsuit, Plaintiff's counsel (representing another client) sued Roblox and one of the

entities that *actually* performed biometrics services for it. These facts somehow failed to dissuade Plaintiff's counsel from filing this unsupportable case.

IDology responded to the complaint—as defendants in civil litigation are often constrained to do—by challenging the Court's jurisdiction over it and the adequacy of Plaintiff's pleadings in early motion practice. IDology also opposed an early (and equally unsupported) motion for class certification filed by Plaintiff's counsel. Not long after the Court denied IDology's motion to dismiss, in November 2024, IDology notified Plaintiff's counsel that Plaintiff had no basis on the merits for her claims as **IDology never processed biometric data for Plaintiff or her guardian**. Indeed, these realities should have been well known to Plaintiff's counsel given their prior litigation against Roblox, and they reverified these truths when Roblox—responding to a subpoena in this case—produced data in January 2025 confirming that IDology had never processed data for Plaintiff or her guardian, as Plaintiff now concedes in her counsel's motion to "[s]ubstitut[e]" her with other putative plaintiffs. *E.g.*, ECF No. 52 at 7-8.

In short, Plaintiff indisputably lacks standing and has no claim against IDology for the undisclosed processing of biometric data in Illinois. But rather than dismiss, her counsel now seeks to amend and persists in advancing some claim against IDology. The Court should not permit Plaintiff's lawyers to do so. By the proposed amendments, they seek to advance claims on behalf of new parties—entirely unrelated to Plaintiff—who are making completely distinct factual allegations that arise from alleged relationships with totally different third parties. It is a different complaint that counsel should file as a new action, if at all. Allowing Plaintiff's counsel to simply "amend" distorts Rule 15 beyond recognition, and it would unfairly prejudice IDology by forcing

it to defend against putative class claims that are in truth time-barred and futile. Instead, the proper course is the denial of leave to amend and dismissal of Plaintiff's case.[1]

## FACTUAL BACKGROUND

Nearly three years after initiating this lawsuit, Plaintiff's counsel seeks leave to substitute their vehicle to sue IDology with completely different people who make new and distinct claims arising from their alleged relationship with totally different third parties. In April 2022, Plaintiff's counsel filed the initial, putative class action complaint, purportedly on behalf of their minor client, R.S., whom they alleged had "[b]etween 2018 and 2019 . . . registered" online with the third-party "Roblox, the maker of a popular children's video game," hoping to join "Roblox's developers program." ECF No. 1-2 ¶¶ 24-25. The complaint further alleged that when Plaintiff took this step, she "upload[ed] her school identification documents and a 'selfie' photograph" to "a biometrically-enabled Application Programming Interface (or 'API')" developed by IDology, a Roblox client. *Id.* ¶¶ 21, 25.

None of that was true. IDology never processed any biometric data for Plaintiff. And her counsel knew it because they had previously sued Roblox and one of its actual providers of biometric verification services. IDology moved to dismiss the complaint, and then an amended complaint, but did not challenge the veracity of the allegations made by Plaintiff's counsel. ECF Nos. 16, 34. Instead, IDology sought dismissal on jurisdictional and pleading grounds. The Court denied IDology's motion. ECF No. 39.

---

[1] As this Court knows, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court ***must*** dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). Plaintiff indisputably lacks standing, even now admitting that IDology never processed her biometric data. ECF No. 52 at 3. "Because standing is an essential ingredient of subject-matter jurisdiction," its absence requires dismissal. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). If the Court has any doubt about this result, IDology respectfully requests a hearing. *See id.* ("[W]hen a court is put on notice that an allegation integral to standing is probably false . . . , the district judge must conduct whatever supplementary factual proceedings are necessary to resolve the doubt.") (citation and quotation marks omitted).

Not long thereafter, on November 26, 2024, counsel for IDology contacted Plaintiff's counsel to confirm their awareness that they had brought this lawsuit on Plaintiff's behalf without a reasoned basis for doing so. Indeed, IDology's own investigation indicated both that it had **never** processed biometric information for Plaintiff, and that Roblox's Biometric Privacy Notice publicly names parties other than IDology as Roblox's service partners for biometric data processing. *See, e.g.*, Ex. B, Nov. 26 email and attachments.[2] Despite being confronted with these facts, Plaintiff's counsel did not immediately withdraw this lawsuit or explain their decision to file it in the first place. Instead, they provided IDology's counsel with copies of a single Roblox webpage that purportedly suggested that IDology processed biometric for Roblox. *See* Ex. C, Nov. 29 Email. Indeed, Plaintiff continued to push this lawsuit forward by serving expansive, overbroad discovery on IDology as recently as January 10, 2025. *See* Ex. D, Jan. 10 email and attachments.

One week later, on January 17, 2025, Roblox produced documents responsive to Plaintiff's subpoena that reinforced IDology's position, confirming that it had never processed biometric data for Plaintiff or her guardian, and that IDology *may have*, at most, done so for a paltry 16 individuals in Illinois. *See* Ex. E, Subpoena to Roblox; Ex. F, Jan. 17 email. Counsel for IDology promptly contacted Plaintiff's counsel again to request that they withdraw their insupportable lawsuit. *See* Ex. G, Jan. 21 email. In response, Plaintiff's counsel maintained their refusal to drop Plaintiff's claims, stating only that they would meet and confer with Roblox, while agreeing, "[f]or the time being, . . . it makes sense to continue *indefinitely* any response from Idology to Plaintiff's

---

[2] IDology's investigation revealed that Plaintiff's counsel knew these realities quite well, as the **same** attorneys purporting to represent Plaintiff had, in November 2021, filed a BIPA lawsuit (on behalf of other parties) against Roblox and a global identity verification service called Veriff; this happened some five months before filing suit against IDology in this matter. In the earlier lawsuit, Plaintiff's counsel alleged that "Roblox utilizes ***Veriff's*** API platform to perform identity verification as part of the age screening process for users of its popular video game platform titled 'Roblox.'" Ex. A, Compl., *McGowan et al v. Veriff, Inc. et al*, No. 1:21-cv-06706, ECF No. 1-2 ¶ 22 (emphasis added). That is in stark contrast to the allegations Plaintiff's counsel made in this case, identifying IDology in place of Veriff.

- 4 -

outstanding discovery requests." Ex. G, Jan. 27 email (emphasis added). Counsel for Defendant followed up on February 3, 2025, again asking if Plaintiff would be withdrawing its complaint in light of the Roblox data confirming "a lack of standing for Plaintiff and a miniscule class." Ex. G, Feb. 3 email.

On February 12, 2025, Plaintiff's counsel responded, asserting that "Plaintiff intends to move the Court for leave to file a second amended complaint to *replace* Plaintiff R.S. with two individuals who had their identities verified by Idology pursuant to relationships with known Idology customers *Lyft* and Illinois *Pointsbet*." Ex. G, Feb. 12 email (emphases added). Counsel's proposed amended complaint thus drops their client, Plaintiff, from the case entirely, and alleges that one proposed new claimant, Gary Tumanov, had his biometric data verified by IDology in *January 2020* in connection with his registration to become a Lyft driver, and another proposed new claimant, Dwight Pruitt, had his biometric data verified by IDology in *November 2021* while registering for a PointsBet account. ECF No. 52-1 ¶¶ 26-27, 33.

Counsel for IDology responded to Plaintiff's counsel the next day, rejecting their attempt to substitute Plaintiff with two entirely new claimants based on stale claims relating to registration with two completely different companies from Roblox, the third party named in the operative complaint. Ex. G, Feb. 13 email; *see also* ECF No. 14 ¶¶ 26-27. IDology's counsel explained, "The proper procedure would be dismissal of the Complaint—as IDology has urged since November, when it became clear that this lawsuit had no basis—and the filing of a new lawsuit." Ex. G, Feb. 13 email. Ignoring this path, Plaintiff's erstwhile counsel elected to file the pending motion.

**ARGUMENT**

Federal Rule of Civil Procedure 15 ordains that courts should afford parties leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Those limiting words have meaning. Indeed,

governing authority in this Circuit explains that "leave to amend is not automatically granted." *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005). Indeed, "a district court is within its discretion to deny leave to amend when it has a 'good reason' for doing so, such as futility, undue delay, prejudice to another party, or bad-faith conduct." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022) (quoting *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019)). This case amply presents the circumstances that warrant such a denial of leave.

Counsel proposes to drop R.S. as Plaintiff and abandon all their allegations of biometric identity processing through Roblox. In their place, counsel proposes to bring claims on behalf of entirely unrelated plaintiffs who allege they registered with completely different enterprises. Such amendments are tantamount to presenting a completely new complaint. Moreover, the lengthy delay of the proposed new claimants in bringing their claims as amendments to an already filed lawsuit unfairly prejudices IDology, which would suddenly be forced to defend factually distinct claims that otherwise appear time barred. Plaintiff's counsel brought an improvident and entirely unsupported lawsuit against IDology arising from its inaccurately alleged relationships with Roblox and Plaintiff. The appropriate resolution is dismissal of Plaintiff's complaint. If the bases for a new lawsuit against IDology actually exist, particularly arising from entirely distinct nuclei of operative facts, then the claimants who own those claims should file a new lawsuit. The proposed amendment instead seeks to immunize stale claims from otherwise viable defenses. That is ***not*** a result that "justice so requires." Fed. R. Civ. P. 15(a)(2).

**I.**     **The Court Should Deny Plaintiff Leave to File a Second Amended Complaint that Replaces Her with New Claimants with Distinct Factual Bases for Their Claims Against IDology.**

The Seventh Circuit teaches that "[p]rejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2)." *Allen*, 41 F.4th at 853. This is especially true if—as is the case here—a plaintiff seeks leave to

amend based on information that plaintiff or her counsel actually knew or should have known long ago. *See Aleshire v. Harris, N.A.*, 586 F. App'x 668, 672 (7th Cir. 2013) (affirming the denial of motion for leave to amended complaint two years after plaintiff filed her original complaint because the facts underlying the proposed new claims were known at the time of filing the original complaint and the defendant had already borne the burden of filing three motions to dismiss); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming denial of plaintiff's motion for leave to amend based on information that was "available long before he sought leave to amend"); *Johnson v. Sales Consultants, Inc.*, 61 F.R.D. 369, 371-72 (N.D. Ill. 1973) (denying motion for leave to amend complaint sought fourteen months after filing initial complaint because the new allegations were already known to the moving party when filing the initial complaint).

As these cases demonstrate, "prejudice is more likely when an amendment comes late in the litigation and will drive the proceedings in a new direction." *Allen*, 41 F.4th at 853-54 (affirming refusal to allow amendment of complaint where amendment would have "take[n] the litigation into new factual territory"). It is especially so that "undue prejudice occurs when a proposed amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations in the complaint' and when the additional discovery required will be expensive and time-consuming." *Ewing v. 1645 W. Farragut, LLC*, No. 16-CV-9930, 2018 WL 11276811, at *1 (N.D. Ill. Nov. 9, 2018), *aff'd*, 90 F.4th 876 (7th Cir. 2024) (citation omitted).

In this case, the amendment proposed by Plaintiff's counsel would cause IDology undue prejudice. Plaintiff commenced this action ***nearly three years ago***, in April 2022, despite lacking any factual basis for her allegations. Indeed, even before initiating this case, Plaintiff and her counsel either knew or should have known the claims that IDology had processed Plaintiff's

biometric data for Roblox lacked merit, as Roblox's publicly available biometric privacy notices actually and explicitly named other parties—not IDology—as Roblox's biometric data service partner. *See* Ex. B. Moreover, the *same* attorneys representing Plaintiff in this matter had previously filed a BIPA lawsuit against Roblox and Veriff in November 2021—some five months before suing IDology in this matter. No doubt after having conducted the prefiling investigation required by Rule 11, those lawyers signed pleadings alleging that "Defendant Roblox utilizes *Veriff's* API platform to perform identity verification as part of the age screening process for users of its popular video game platform titled 'Roblox.'" Ex. A (emphasis added). Plaintiff's counsel nevertheless commenced this lawsuit to sue IDology.

Since that time, IDology mustered its defenses to prepare and file two motions to dismiss (ECF Nos. 11, 16), opposed Plaintiff's motion for class certification (ECF No. 18), and undertook a significant internal investigation of Plaintiff's allegations that it had somehow violated the BIPA by performing her biometric identity verification for its alleged third-party partner, Roblox. *See* ECF No. 14 ¶¶ 22, 26. Both IDology's factual investigation as well as third-party discovery from Roblox confirmed that Plaintiff's claims are baseless; Roblox and IDology never processed any biometric data involving Plaintiff or her guardian. *See* Ex. B; Ex. F. Defense counsel thus notified Plaintiff's counsel in November 2024 that her claims lacked any factual merit. *See* Ex. B.

Rather than voluntarily dismiss the case, Plaintiff's counsel *propounded discovery*, and waited an additional two months before *seeking leave to amend* the complaint. The newly proposed claims include causes of action that have plainly expired under the applicable statute of limitations. They also seek to *replace* Plaintiff, a minor who purportedly registered for Roblox's developer's program, with two, unrelated adults who allege their interaction with IDology by

registering with entirely different third parties (Lyft and PointsBet) on different platforms dating back more than five years. *Compare* ECF No. 14 ¶¶ 26-27, *with* ECF No. 52-1, ¶¶ 26-27, 33.

Plaintiff's proposed amendment is tantamount to an entirely new complaint. It is thus procedurally improper and unduly prejudicial to IDology. Discovery on the new claims brought by new plaintiffs and their new alleged third-party partners would require the Court to ***restart*** discovery. *See* ECF Nos. 47, 55. The proper course should be dismissal, not an amendment that unduly prejudices IDology and simply allows Plaintiff's erstwhile counsel a complete do-over.

**II.  Plaintiff Improperly Seeks to Expand the Proposed Class to Cover Claims that Are Time Barred in Light of Plaintiff R.S.'s Undisputed Lack of Standing, Which Renders the Amendment Futile and Would Unduly Prejudice IDology.**

The Court should deny counsel's untimely and bad-faith attempt to replace Plaintiff with new claimants to assert what would otherwise be time-barred claims. Plaintiff's lawsuit notably failed to toll the statute of limitations for either absent, putative class members, or for the new proposed plaintiffs, because she indisputably lacks standing. *See Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998) (Posner, C.J.) (holding that the filing of a purported class-action complaint by a plaintiff who lacks standing does ***not*** toll the statute of limitations for those who later seek to intervene as plaintiffs); *see also, e.g.*, *Hess v. I.R.E. Real Est. Income Fund, Ltd.*, 255 Ill. App. 3d 790, 811, 629 N.E.2d 520, 534 (1st Dist. 1993) (holding that the "class tolling rule does not apply where the representative lacks standing").[3] It is indisputable that the named Plaintiff, R.S., lacks

---

[3] Allowing application of the tolling rule here would invite the same type of abuse that the court in *Hess* warned against in rejecting the application of class tolling to claims for which the named plaintiff lacked standing. *See* 255 Ill. App. 3d at 809-10, 629 N.E.2d at 533-34 (finding the named plaintiff's lack of standing as to every defendant except for one was apparent from the face of the complaint, making it unreasonable for absent class members to rely on the complaint). Similarly, permitting tolling where the named plaintiff lacks standing would encourage plaintiffs' attorneys to file impermissible mere "placeholder actions, which arguably give plaintiffs unearned leverage over defendants by artificially raising the stakes while simultaneously buying time to piece together a more formidable lawsuit" and find a suitable class representative during discovery. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*., No. 9 CV 3690, 2015 WL 3988488, at *28 (N.D. Ill. June 29, 2015).

standing. *See* ECF No. 52. at 3 (conceding that "third-party discovery into Plaintiff's standing" reveals that "Plaintiff R.S. is not amongst the Roblox developers whose identities Idology verified"). Thus, the new proposed plaintiffs' claims were not tolled.[4]

Plaintiff's counsel's seeming motivation in seeking leave to amend rather than voluntarily dismissing their improvident lawsuit is to evade the operation of the applicable limitations periods to their new clients' stale claims. As this Court knows, BIPA claims are subject to a five-year limitations period. *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 42, 216 N.E.3d 845, 854 (Ill. 2023). Thus, if Plaintiff were to dismiss the instant case and file a new putative class action today, the relevant class period would date back five years to violations only occurring since March 2020. *See id.* But if Plaintiff is permitted to amend its complaint despite the named plaintiffs' lack of standing, the relevant class period could date back as far as April 2017, five years before they filed the *initial* complaint on behalf of Plaintiff, even though she indisputably lacks standing.

The face of the proposed amended complaint further illustrates the prejudice of permitting Plaintiff's counsel to amend their complaint to reach back in time well beyond the applicable statute of limitations. Indeed, the claims of one of the new proposed plaintiffs, Mr. Gary Tumanov, are otherwise clearly time barred. Mr. Tumanov specifically alleges that his identity was verified when he registered with Lyft in *January 2020*. ECF No. 52-1 ¶¶ 26-29. Because the alleged BIPA violation involving Mr. Tumanov allegedly occurred more than five years ***before*** Plaintiff even

---

[4] Plaintiff's counsel cannot rely on the relation back doctrine to revive their new clients' untimely claims, as their proposed amended complaint alleges entirely new facts. *See Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002) ("[F]or an untimely claim to relate back, it must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type.") (quotations and citation omitted); *see also Mike & Sons Const., Inc. v. Int'l Union of Bricklayers & Allied Craftworkers, Dist. Council No. 1*, No. 08 C 5150, 2009 WL 2605307, at *2 (N.D. Ill. Aug. 25, 2009) (noting that Rule 15's relation back provision "is designed to allow parties to add new claims only if there is no unfair surprise or prejudice," and "for example, does not allow a new party to be added who would then 'be deprived of his statute of limitations defense.'") (citation omitted).

sought leave to amend its complaint on February 25, 2025, they should be time barred.[5] Allowing those claims to proceed would plainly prejudice IDology, and this Court should accordingly deny that part of the amendment as futile, in addition to its other flaws. *See, e.g.*, *Rodriguez*, 286 F.3d at 980 ("A district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations.").

Plaintiff's counsel nevertheless attempts to shoehorn new time-barred claims into this action through their proposed amendment, demonstrating their undue delay and bad-faith motive in seeking amendment. Rather than countenance this abuse, the Court should deny the amendment and dismiss Plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, IDology respectfully requests that this Court deny Plaintiff's motion for leave to amend and dismiss Plaintiff's claims for lack of subject matter jurisdiction based on Plaintiff's undisputed lack of standing.

**DATED**: March 27, 2025                    */s/Adam R. Fox*

**COZEN O'CONNOR**                           **SQUIRE PATTON BOGGS (US) LLP**

Jack J. Carriglio                            Adam R. Fox (*pro hac vice*)
Corey T. Hickman                             Hannah Makinde (*pro hac vice*)
COZEN O'CONNOR                               555 S. Flower Street, Suite 3100
123 N. Wacker Drive, Suite 1800              Los Angeles, CA 90071
Chicago, IL 60606                            Tel.: (213) 624-2500
Telephone: (312) 474-7900                    Fax: (213) 623-4581
Facsimile: (312) 474-7898                    Email: adam.fox@squirepb.com
Jcarriglio@cozen.com                                hannah.makinde@squirepb.com
chickman@cozen.com
                                             Kristin Bryan (*pro hac vice*)
                                             1000 Key Tower
                                             127 Public Square

---

[5] Had Plaintiff's counsel not unduly delayed—either before filing the instant lawsuit or when defense counsel provided notice in November 2024 that the complaint lacked merit—Plaintiff's counsel would not be seeking to assert claims on behalf of Mr. Tumanov that are otherwise time barred.

- 12 -

Cleveland, OH 44114
Tel.: (216) 479-8500
Fax: (216) 479-8780
Email: kristin.bryan@squirepb.com

*Counsel for Defendant IDology, Inc.*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was electronically filed with this Court's CM/ECF system on March 27, 2025, and accordingly served automatically upon all counsel of record for this matter.

                                            **SQUIRE PATTON BOGGS (US) LLP**

                                            */s/Adam R. Fox*
                                            Adam R. Fox