# EXHIBIT A

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 15589578
2021L001202
FILEDATE: 11/12/2021 8:32 PM
Date Submitted: 11/12/2021 8:32 PM
Date Accepted: 11/15/2021 1:59 PM
KS

| | |
|---|---|
| ANTHONY MCGOWAN; A.M., a Minor, by and through his Guardian ANTHONY MCGOWAN; and W.G., a Minor, by and through his Guardian WALTER GALLIGANI, individually and on behalf of similarly situated individuals, | ) ) ) ) ) ) No. |
| *Plaintiffs,* | ) ) Hon.    2021L001202 ) |
| v. | ) ) ) JURY TRIAL DEMANDED |
| ROBLOX CORPORATION, a Delaware corporation; and VERIFF, INC., a Delaware corporation, | ) ) ) ) |
| *Defendants.* | ) ) |

## CLASS ACTION COMPLAINT

Anthony McGowan; A.M., a minor, by and through his Guardian Anthony McGowan; and

W.G., a minor, by and through his Guardian Walter Galligani, (collectively "Plaintiffs"),

individually and on behalf of other similarly situated individuals, bring this Class Action

Complaint against Defendants Roblox Corporation ("Roblox") and Veriff, Inc. ("Veriff")

(collectively "Defendants"), for their violations of the Illinois Biometric Information Privacy Act,

740 ILCS 14/1, *et seq.* ("BIPA"), and to obtain redress for all persons injured by Defendants'

conduct. Plaintiffs allege the following based on personal knowledge as to their own acts and

experiences, and as to all other matters, upon information and belief, including an investigation

conducted by their attorneys.

1

## INTRODUCTION

1.        Plaintiffs seek redress for Defendants' unauthorized collection of their biometric information and to represent classes of individuals who had their unique facial biometrics used without their valid consent or authorization by Defendants when they interacted with Defendants' identity verification technology.

2.        On behalf of themselves and the proposed Classes defined below, Plaintiffs seek an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Classes, together with costs and reasonable attorneys' fees.

## PARTIES

4.        At all relevant times, Plaintiff A.M., a minor, and his Guardian, Plaintiff Anthony McGowan, have been residents and citizens of the state of Illinois.

5.        At all relevant times, Plaintiff W.G., a minor, and his Guardian, Walter Galligani, have been residents and citizens of the state of Illinois.

6.        Defendant Veriff, Inc. is a Delaware corporation that conducts business throughout Illinois, including in DuPage County, Illinois.

7.        Defendant Roblox Corporation is a Delaware corporation that conducts business throughout Illinois, including in DuPage County, Illinois.

## JURISDICTION AND VENUE

8.        This Court may assert personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Defendants conduct business within this state and because Plaintiffs' claims arise out of Defendants' unlawful in-state actions, as Defendants captured, collected, stored, used and profited from Plaintiffs' biometric identifiers and/or biometric information in Illinois.

2

9.     Venue is proper in DuPage County, Illinois pursuant to 735 ILCS 5/2-101, because Defendants conduct business in DuPage County, Illinois, and thus reside there under § 2-102.

## THE BIOMETRIC INFORMATION PRIVACY ACT

10.     "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

11.     BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

12.     As set forth in BIPA, biologically unique identifiers, such as a person's unique facial geometry, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

13.     As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including facial scans.

14.     Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA applies to entities that interact with either of two forms of biometric data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).

15.     BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric

3

identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

16.     "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

17.     In BIPA, the Illinois General Assembly identified five distinct activities that may subject private entities to liability:

> a.     possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);
>
> b.     collecting, capturing, purchasing, receiving, or obtaining biometrics without valid consent, 740 ILCS 14/15(b);
>
> c.     selling, leasing, trading, or profiting from biometrics, 740 ILCS 14/15(c);
>
> d.     disclosing or disseminating biometrics, 740 ILCS 14/15(d); and
>
> e.     failing to secure biometrics using a reasonable standard of care, 740 ILCS 14/15(e).

18.     As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

4

## COMMON FACTUAL ALLEGATIONS

19. In order to provide its clients with biometric authentication services, Defendant Veriff developed a biometrically-enabled Application Programming Interface (or "API").

20. Defendant Veriff works with its clients to incorporate its API platform into their mobile or internet-based applications, where it collects and analyzes individuals' facial biometrics in order to authenticate their identities for its clients.

21. Veriff's API performs its identity verification by requiring the user to present some form of identification that features a picture of their face from which it collects a facial biometric blueprint, and then obtaining a "selfie" from a live picture of the user's face that it uses to collect a separate facial biometric blueprint, which it then compares to the one obtained from the identifying document. If Veriff's API determines that the facial biometrics from the two sets of pictures match, the user's identity is verified.

22. For example, Defendant Roblox utilizes Veriff's API platform to perform identify verification as part of the age screening process for users of its popular video game platform titled "Roblox."

23. Defendant Roblox is a video game developer most widely known for the development of its game platform titled "Roblox." Roblox is a mobile application that can be installed on mobile phones and tablets that permits players access to thousands of games that are created on its Roblox platform. While Roblox features racing, adventure, action, and many other types of games, all of the games exist on the Roblox platform and feature a distinctive low-resolution "block" design that minimizes the realism of the games and makes them more appropriate for its players, the majority of whom are minors.

5

24.     Defendant's Roblox game boasts a daily active user rate of 43.2 million as of the
second quarter in 2021.[1]

25.     To allow its users to communicate with one another, Roblox has traditionally had
a chat function that allows users to talk to one another through written text communication. In an
effort to enhance its Roblox platform and allow players a more connected playing experience, in
September 2021 Roblox began to release a "Spatial Voice Feature" which allows its players to
communicate with each other via their device's microphone so that it is as if they were talking to
each other in the real world.[2]

26.     However, because the vast majority of its players are under the age of 18, with
nearly half of its player base under the age of 13, in an effort to protect its younger players from
potentially age-inappropriate language that might be heard through its Spatial Voice Feature,
Roblox worked with Veriff to implement a biometric authentication API to ensure that only users
over the age of 13 would have access to the Spatial Voice Feature.[3]

27.     However, even though thousands of Roblox's players are Illinois residents,
Defendants failed to implement necessary provisions to ensure that they complied with BIPA's
requirements before obtaining their facial biometrics.

**FACTS SPECIFIC TO PLAINTIFFS**

28.     For example, in or about September 2021, Plaintiff A.M accessed his Roblox game
account on a desktop computer to enable social capabilities, including Roblox's Spatial Voice

---

[1] www.statista.com/statistics/1192573/daily-active-users-global-roblox/.

[2] https://developer.roblox.com/en-us/articles/spatial-voice.

[3] www.techtimes.com/articles/265654/20210921/roblox-launches-age-verification-process-spatial-voice-user-generated-content.htm.

Feature. At this time, Plaintiff was asked to "Verify His Age" and was forwarded to an "Identity Verification" prompt that, as shown below, required him to scan a QR code using his cell phone.



29.     When Plaintiff A.M. scanned the QR code on Roblox's website his cell phone browser was forwarded to "roblox.com/verify", which featured the below prompt and hosted Defendants' biometric identity verification API.



7

30.    After Plaintiff A.M. went forward with starting the identity verification "session," as shown below, he was prompted to take a photo of valid photo ID document.



31.    Plaintiff A.M. asked his father and Guardian, Plaintiff McGowan, for his driver's license to complete Defendants' verification process, which Plaintiff McGowan provided.

32.    Upon taking a picture of Plaintiff McGowan's driver's license, Defendants' biometric identity verification API extracted a biometric blueprint of Plaintiff McGowan's face from the photo on his driver's license.

33.    After providing Plaintiff McGowan's driver's license, as the last part of the verification process, Plaintiff A.M. was finally asked to take a selfie picture. Upon taking a selfie picture of his face, Defendants' API extracted a biometric blueprint of Plaintiff A.M.'s face from his selfie to compare it to the one extracted from Plaintiff McGowan, and accepted Plaintiff A.M.'s verification.

34.    In or about September 2021, Plaintiff W.G. similarly went through the process of verifying his identity to enable Roblox's Spatial Voice Feature.

35.     Plaintiff W.G. interacted with the same prompts shown above that Plaintiff A.M. had to complete.

36.     When Plaintiff W.G. was asked to provide a picture of a valid photo ID document, he similarly asked his father and Guardian, Walter Galligani, for his driver's license.

37.     Mr. Galligani provided his driver's license to Plaintiff W.G., who proceeded to take a picture of it to submit through Defendants' verification process.

38.     As with Plaintiff McGowan's driver's license, Defendants' biometric identity verification API extracted a biometric blueprint of Mr. Galligani's face from the photo on his driver's license.

39.     After providing his father's driver's license, Plaintiff W.G. was asked to take a selfie picture. As with Plaintiff A.M., upon taking a selfie picture of his face, Defendants' API extracted a biometric blueprint of Plaintiff W.G.'s face from his selfie to compare it to the one extracted from his father's driver's license, and accepted Plaintiff W.G.'s verification.

40.     Accordingly, Plaintiffs, like the other members of the Classes, had their facial biometrics collected, captured, and transmitted by Defendants' API platform

41.     However, as shown above, Defendants failed to obtain valid written consent as required by BIPA to collect such biometric identifiers.

42.     In addition, at the time Defendants collected and came into possession of Plaintiffs' facial biometrics, Defendant Roblox failed to make publicly available any written policy as to its retention and deletion practices regarding the biometrics in its possession.

43.     Finally, Defendant Veriff unlawfully profited from the facial biometrics it obtained from Plaintiffs and the other members of the Classes. On information and belief, Roblox contracted with Veriff to provide biometric identity verification services either at a set flat cost or on a per-

9

user basis and thus Veriff profited directly from Plaintiffs' and other Class members' biometric data.

## CLASS ALLEGATIONS

44.     Plaintiffs bring this action on behalf of themselves and two classes of similarly situated individuals pursuant to 735 ILCS § 5/2-801 as defined below:

> **The Roblox Class:** All persons within the state of Illinois whose facial biometric identifiers or biometric information were collected, captured, stored, disseminated, transmitted or otherwise used by Roblox Corporation any time within the applicable limitations period.

> **The Veriff Class:** All persons within the state of Illinois whose facial biometric identifiers or biometric information were collected, captured, stored, disseminated, transmitted or otherwise used by Veriff, Inc. any time within the applicable limitations period.

45.     Excluded from the Classes are any members of the judiciary assigned to preside over this matter, any officer or director of Defendants, and any immediate family member of such officer or director.

46.     There are thousands of members of the Classes, making the members of the Classes so numerous that joinder of all members is impracticable. Although the exact number of members of the Classes is currently unknown to Plaintiffs, the members can be easily identified through Defendants' records.

47.     Plaintiffs' claims are typical of the claims of the Classes they seek to represent, because the basis of Defendants' liability to Plaintiffs and the Classes is substantially the same, and because Defendants' conduct has resulted in similar injuries to Plaintiffs and to the members of the Classes.

48.     There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual

members of the Classes. Common questions for the members of the Classes include, but are not limited to, the following:

      a. Whether Defendants collect, capture, or otherwise obtain facial biometric identifiers or biometric information from Illinois residents;

      b. Whether Defendants obtained a valid written release before capturing, collecting, or otherwise obtaining facial biometric identifiers or biometric information;

      c. Whether Defendant Veriff profited from the facial biometrics it captured from the members of the Classes;

      d. Whether Defendant Roblox maintained a publicly available policy regarding the facial biometrics it captured from the members of the Roblox Class;

      e. Whether Defendants' conduct violates BIPA;

      f. Whether Defendants' BIPA violations are willful or reckless; and

      g. Whether Plaintiffs and the Classes are entitled to damages and injunctive relief.

    49.    Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

    50.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including BIPA class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

51.     Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making injunctive or corresponding declaratory relief appropriate for the Classes as a whole.

## COUNT I
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)
### Against Defendant Roblox Corporation
### (On behalf of Plaintiffs and the Roblox Class)

52.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

53.     Defendant Roblox is a private entity under BIPA.

54.     As discussed above, Plaintiffs and the other Roblox Class members have had their facial biometrics captured and collected, and thus obtained and possessed, by Defendant Roblox through its biometric identity verification API.

55.     Section 15(a) of BIPA requires any entity in possession of biometric identifiers or biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

56.     Though Defendant Roblox has come into possession of Plaintiffs' and other Roblox Class members' facial biometric identifiers and/or information, it has failed to make publicly available any policy addressing its biometric retention and destruction practices.

57.     As a result, Defendant Roblox has violated Section 15(a) of BIPA.

58.     Defendant Roblox knew, or was reckless in not knowing, that its utilization of a biometric identity verification API, which thousands of Illinois residents interacted with, would

be subject to 15(a) of BIPA, a statutory provision passed in 2008, yet failed to comply with the statute.

59.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

60.     Defendant Roblox's violations of Section 15(a) of BIPA, which has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(a) of BIPA.

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Roblox Class, respectfully request that this Court enter an Order:

        a. Certifying the Roblox Class as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

        b. Declaring that Defendant Roblox's actions, as set forth herein, violate BIPA;

        c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Roblox Class by requiring Defendant Roblox to comply with BIPA;

        d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

        e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

        f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

        g. Awarding pre- and post-judgment interest, as allowable by law; and

13

h. Awarding such further and other relief as the Court deems just and equitable.

## COUNT II
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
### Against Defendants
### (On behalf of Plaintiffs and the Roblox Class and the Veriff Class)

61. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

62. Defendants are private entities under BIPA.

63. As discussed above, Plaintiffs and the other members of the Classes have had their facial biometrics, extracted, collected, captured, and otherwise obtained by Defendants as a result of interacting with Defendants' biometric identity verification API.

64. BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric identifiers or biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

65. Each instance when Defendants' API used pictures of Plaintiffs' and the other members of the Classes' faces for identity verification, Defendants extracted captured, collected or otherwise obtained Plaintiffs' and the other Veriff and Roblox Class members' facial biometric identifiers and/or information without their valid written consent and without complying with, and, thus, in violation of BIPA.

14

66.     Defendants' practice with respect to capturing, collecting, obtaining, storing, and using biometrics fails to comply with applicable BIPA requirements:

        a.  Defendants failed to inform Plaintiffs and the members of the Classes in writing that their biometrics were being collected, prior to such collection, as required by 740 ILCS 14/15(b)(1);

        b.  Defendants failed to inform Plaintiffs and the Classes in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

        c.  Defendants failed to inform Plaintiffs and the Classes in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2); and

        d.  Defendants failed to obtain a written release, as required by 740 ILCS 14/15(b)(3).

67.     As a result, Defendants have violated Section 15(b) of BIPA.

68.     Defendants knew, or were reckless in not knowing, that its biometric identity verification API technology, which thousands of Illinois residents interacted with, would be subject to Section 15(b) of BIPA, a statutory provision passed in 2008, yet failed to comply with the statute.

69.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

70.     Defendants' violations of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with Sections 15(a) and 15(b) of BIPA.

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully requests that this Court enter an Order:

    a. Certifying the Classes as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

    b. Declaring that Defendants actions, as set forth herein, violate BIPA;

    c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Classes by requiring Defendants to comply with BIPA;

    d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

    e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

    f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

    g. Awarding pre- and post-judgment interest, as allowable by law; and

    h. Awarding such further and other relief as the Court deems just and equitable.

### COUNT III
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)**
**Against Defendant Veriff, Inc.**
**(On behalf of Plaintiffs and the Roblox Class and the Veriff Class)**

71.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

72.    Defendant Veriff is a private entity under BIPA.

73.    As discussed above, Plaintiffs and the other members of the Classes have had their facial biometrics, collected, captured, and obtained by Defendant Veriff as a result of interacting with Defendants' biometric identity verification API.

74.     Section 15(c) of BIPA prohibits any private entity in possession of biometrics, such as Defendant Veriff, from selling, leasing, trading, or otherwise profiting from such biometrics. 740 ILCS 14/15(c).

75.     As alleged herein, Defendant Veriff profited from the facial biometrics it obtained from members of the Classes, including Plaintiffs, as Defendant Veriff provides its biometric identification technology at a cost to its customers such as Defendant Roblox and others.

76.     Accordingly, Defendant Veriff has violated Section 15(c) of BIPA.

77.     Defendant Veriff knew, or was reckless in not knowing, that its biometric API technology would be subject to the provisions of Section 15(c) of BIPA, a statutory provision in effect since 2008, yet failed to comply with the statute.

78.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

79.     Defendant Veriff's violations of Section 15(c) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant Veriff negligently failed to comply with Section 15(c) of BIPA.

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully requests that this Court enter an Order:

      a.  Certifying the Classes as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

      b.  Declaring that Defendant Veriff's actions, as set forth herein, violate BIPA;

c.  Awarding injunctive and equitable relief as necessary to protect the interests of

    Plaintiffs and the Classes by requiring Defendant Veriff to comply with BIPA;

d.  Awarding statutory damages of $5,000 for each willful and/or reckless violation of

    the BIPA, pursuant to 740 ILCS 14/20(2);

e.  Awarding statutory damages of $1,000 for each negligent violation of the BIPA,

    pursuant to 740 ILCS 14/20(1);

f.  Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant

    to 740 ILCS 14/20(3);

g.  Awarding pre- and post-judgment interest, as allowable by law; and

h.  Awarding such further and other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated:  November 12, 2021

Respectfully Submitted,

ANTHONY MCGOWAN, A.M., a Minor,
by and through his Guardian ANTHONY
MCGOWAN, and W.G., a Minor, by and
through his Guardian WALTER
GALLIGANI, individually and on behalf
of similarly situated individuals

By:    /s/ Timothy P. Kingsbury
       *One of Plaintiffs' Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
Colin P. Buscarini
MCGUIRE LAW, P.C. (Firm ID: 327349)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Classes*

# EXHIBIT 4

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

ANTHONY MCGOWAN, A.M., a Minor,  )
by and through his Guardian ANTHONY  )
MCGOWAN, and W.G., a Minor, by and  )
through his Guardian WALTER  )
GALLIGANI, individually and on behalf  )
of similarly situated individuals,  )
                                    )
       *Plaintiffs,*           )
                                    )
              v.              )
                                    )
ROBLOX CORPORATION, a Delaware  )
corporation; VERIFF, INC., a Delaware  )
corporation.  )
                                    )
       *Defendants.*      )

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 15636907
2021L001202
FILEDATE: 11/17/2021 11:52 AM
Date Submitted: 11/17/2021 11:52 AM
Date Accepted: 11/18/2021 7:27 AM
KS

No. 2021L001202

Hon. Bryan S. Chapman

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY

Anthony McGowan, A.M. a minor, by and through his Guardian Anthony McGowan, and W.G. a minor, by and through his Guardian Walter Galligani, (collectively "Plaintiffs"), by and through their undersigned counsel, pursuant to 735 ILCS 5/2-801, move for entry of an order certifying the Classes proposed below, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel. Alternatively, Plaintiffs request, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011). In support of their Motion, Plaintiffs submit the following Memorandum of Law.

Dated: November 17, 2021

Respectfully Submitted,

ANTHONY MCGOWAN, A.M., a Minor,
by and through his Guardian ANTHONY
MCGOWAN, and W.G., A Minor, by and
through his Guardian WALTER
GALLIGANI, individually and on behalf
of similarly situated individuals

By:    /s/ Timothy P. Kingsbury
       *One of Plaintiffs' Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
Colin P. Buscarini
MCGUIRE LAW, P.C. (Firm ID: 327349)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Classes*

2

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIEY, FOR
A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**

This Court should certify two classes of Illinois residents whose biometrics were obtained by Defendants Roblox Corporation ("Roblox") and Veriff, Inc. ("Veriff") in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Defendant Veriff provides its clients with biometric authentication services through an Application Programming Interface ("API"). (Complaint, "Compl.," at ¶ 19.) Veriff works with its clients to incorporate its API into their mobile or internet-based applications, where it collects and analyzes individuals' facial biometrics in order to authenticate their identities. (*Id.* at ¶ 20.) For example, Defendant Roblox implemented Veriff's API into its popular mobile game platform of the same name, "Roblox," to perform identity verification as part of an age screening process to allow players of the game access to certain features. (*Id.* at ¶ 22.) In doing so, Defendants have violated BIPA because Defendant Roblox failed to make publicly available a valid policy regarding its retention and deletion policies for the biometrics it obtained, Defendants failed to obtain valid written consent to gather Plaintiffs' and the other members of the classes' biometrics, and Defendant Veriff profited from Plaintiffs' and the other members of the classes' biometrics. (*Id.* at ¶¶ 56, 66, 75.) After Plaintiffs learned of Defendants' wrongful conduct, they brought suit on behalf of classes of similarly situated individuals to put a stop to Defendants use of their biometrics in violation of BIPA, and to obtain redress for all persons injured by their conduct.

## I.  INTRODUCTION: BIPA

The Illinois Biometric Information Protection Act is designed to protect individuals' biometrics. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of

3

measurements of a specified physical component (eye, finger, voice, hand, face)." *Rivera*, 238 F. Supp. 3d at 1296. Under BIPA, biometric identifiers include handprints, fingerprints and voiceprints; while biometric information can be defined as any information based on a biometric identifier, regardless of how it is converted or stored. (Compl. at ¶¶ 1, 6–7.)

In recognition of the importance of the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that private entities, such as Defendants, may not obtain and/or possess an individual's biometrics unless they publish publicly and make available a written retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a); Compl. at ¶ 17. In addition, BIPA also requires that any entities such as Defendants obtain valid written consent before receiving any biometrics. 740 ILCS 14/15(b); Compl. at ¶ 17. Furthermore, BIPA prohibits private companies from selling, leasing, trading, or otherwise profiting from a person's biometric identifier or biometric information. 740 ILCS 14/15(c); Compl. at ¶ 17.

## II. FACTUAL BACKGROUND

### A. The Underlying Misconduct.

Defendant Veriff provides its clients with biometric authentication services through an API. (Compl. at ¶ 19.) Veriff works with its clients to incorporate its API into their mobile or internet-based applications, where it collects and analyzes individuals' facial biometrics in order to authenticate their identities. (*Id.* at ¶ 20.) For example, Defendant Roblox implemented Veriff's API into its popular mobile game platform of the same name, "Roblox," to perform identity verification as part of an age screening process to allow players of the game access to certain features. (*Id.* at ¶ 22.) Specifically, in September 2021 Defendant Roblox sought to release a "Spatial Voice Feature" that would allow players of its game to talk to each other through their

4

mobile device's microphone. (Compl. at ¶ 25.) However, because Defendant Roblox's game platform is overwhelmingly used by players who are minors, in an effort to prevent minors from being exposed to age-inappropriate language through the new voice chat feature, Roblox worked with Veriff to implement a biometric authentication API. (*Id.* at ¶ 26.)

Defendants' biometric identity verification API operated by requesting that the user of Roblox's game platform who wanted to gain access to the Spatial Voice Feature scan a QR code from their account page with their cell phone that opened a webpage hosted by Roblox where the API operated. (*Id.* at ¶¶ 28, 29.) The user, like Plaintiffs did here, is then asked to use their cell phone to take a picture of a government-issued identification document. (*Id.* at ¶ 30.) Defendants' biometric identity verification API then extracts the facial biometric blueprint of the face featured on the ID document provided. (*Id.* at ¶ 32.) Defendants' verification process then asks the user to provide, as Plaintiffs A.M. and W.G. did here, a selfie picture of their face, which Defendants' API uses to extract another facial biometric blueprint against which it compares the facial biometrics that it obtained from the ID document. (*Id.* at ¶ 32.)

However, while thousands of individuals located in Illinois, including Plaintiffs and the other members of the Classes, had to undergo Defendants' facial biometric verification process, Defendants failed to obtain valid written consent as required by BIPA to collect such biometric identifiers. (*Id.* at ¶ 41.) Furthermore, Roblox failed to make publicly available a valid written policy as to its retention and deletion practices regarding the biometrics it gathered. (*Id.* at ¶ 42.) Defendant Veriff also unlawfully profited from the facial biometrics it obtained from Plaintiffs and the other members of the Classes. (*Id.* at ¶ 43.)

5

**B.      The Proposed Classes**

Plaintiffs bring this action on behalf of themselves and similarly situated individuals

pursuant to 735 ILCS § 5/2-801. Plaintiffs seek to represent the Classes defined as follows:

> **The Roblox Class**: All persons within the state of Illinois whose facial biometric
> identifiers or biometric information were collected, captured, stored, disseminated,
> transmitted or otherwise used by Roblox Corporation any time within the applicable
> limitations period.

> **The Veriff Class**: All persons within the state of Illinois whose facial biometric
> identifiers or biometric information were collected, captured, stored, disseminated,
> transmitted or otherwise used by Veriff, Inc. any time within the applicable
> limitations period.

(Compl. at ¶ 44.) As explained below, the proposed Classes satisfy each of the four requirements

for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity,

commonality, adequacy of representation, and fair and efficient adjudication. A class action is not

just appropriate here, it is also the only way that the members of the putative Classes can obtain

appropriate redress for Defendants' unlawful conduct.

**III.    ARGUMENT**

**A.      Standards for Class Certification**

To obtain class certification, it is not necessary for a plaintiff to establish that she will

prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he

question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and

citation omitted)). As such, in determining whether to certify a proposed class, the Court should

accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378

Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the

6

maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1)    The class is so numerous that joinder of all members is impracticable.
> (2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
> (3)    The representative parties will fairly and adequately protect the interest of the class.
> (4)    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Classes, and the Court should therefore certify the proposed Classes.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiffs have

not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

### B. The Numerosity Requirement is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiffs allege that there are thousands of members of the Classes. (Compl. at ¶ 46.) In addition, given the massive number of individuals who play Defendant Roblox's game, and the fact that Defendant Veriff provides its biometric identity verification services to numerous other entities, there is little question that there is a significant number of members of the Classes. Because definitive evidence of numerosity can only come from the records of Defendants and their agents, it is proper to rely upon the allegations of the Complaint in certifying the Classes. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Classes can be easily and objectively determined

8

from Defendants' records as Defendants maintain records of all of the individuals whose identities they verified and their contact information. Furthermore, it would be completely impracticable to join the claims of the members of the Classes, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C. Common Questions of Law and Fact Predominate

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: whether Defendants collect, capture, or otherwise obtain facial biometrics from Illinois residents who underwent their age/identity verification process; whether Defendant Roblox had a valid publicly available policy regarding its retention and deletion of biometric information; whether Defendant Veriff profited from Plaintiffs' and the other Classes biometrics; whether Defendants failed to obtain valid written consent to gather the facial biometrics that they obtained; whether Defendants' conduct violates BIPA; whether Defendants' BIPA violations are willful or reckless; and whether Plaintiffs and the Classes are entitled to damages and injunctive relief. (Compl. at ¶ 48.)

As alleged, and as will be shown through obtainable evidence, during the relevant time period Defendants engaged in a common course of conduct by collecting, capturing, storing, or

profiting from the Classes' facial biometrics without having a valid publicly available policy in place regarding the retention and deletion of the biometrics collected and without obtaining valid consent to engage in such collection. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiffs have satisfied this hurdle to certification.

**D.      Adequate Representation**

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiffs have the exact same interests as the members of the proposed Classes. Plaintiffs have alleged that, like the other members of the Classes, their facial biometrics were obtained by Defendants through their biometric verification process in violation of BIPA. (Compl. at ¶¶ 28–39.) Plaintiffs' pursuit of this matter against Defendants demonstrates that they will be zealous advocates for the Classes. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. Accordingly, the proposed class representatives and proposed class counsel will adequately protect the interests of the members of

the Classes, thus satisfying Section 2-801(3).

### E. Fair and Efficient Adjudication of the Controversy

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon,* 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of...protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those effected, but result in many small, individual claims. Here, absent a class action, most members of the Classes would find the cost of litigating their statutorily-limited claims to be prohibitive, and

11

multiple individual actions would be judicially inefficient. *Maxwell*, 2004 WL 719278, at *6.

Certification of the proposed Classes is necessary to ensure that Defendants' conduct becomes compliant with BIPA, to ensure that the Classes' privacy rights in their biometrics are sufficiently protected, and to compensate those individuals who have had their statutorily-protected privacy rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of members of the Classes would be able to obtain redress, or that Defendants would willingly implement the procedures necessary to comply with the statute. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.    CONCLUSION

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiffs respectfully request that the Court enter an Order certifying the proposed Classes, appointing Plaintiffs as Class Representatives, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: November 17, 2021                 Respectfully Submitted,

ANTHONY MCGOWAN, A.M., a Minor,
by and through his Guardian ANTHONY
MCGOWAN, and W.G., a Minor, by and
through his Guardian WALTER
GALLIGANI, individually and on behalf
of similarly situated individuals

By: /s/ Timothy P. Kingsbury
    *One of Plaintiffs' Attorneys*

12

Eugene Y. Turin
Timothy P. Kingsbury
Colin P. Buscarini
MCGUIRE LAW, P.C. (Firm ID: 327349)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF FILING

The undersigned, an attorney, hereby certifies that on November 17, 2021, a copy of *Plaintiffs' Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* was filed electronically with the Clerk of Court using the e-filing system.


/s/ Timothy P. Kingsbury

# EXHIBIT 5

DocuSign Envelope ID: 9074AA5C-7C68-448E-9683-5A976AA8440E

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANTHONY MCGOWAN; A.M., a Minor, by and through his Guardian ANTHONY MCGOWAN; and W.G., a Minor, by and through his Guardian WALTER GALLIGANI, individually and on behalf of similarly situated individuals, | Case No. _____ |
| Plaintiffs, | |
| v. | |
| ROBLOX CORPORATION, a Delaware Corporation; and VERIFF, INC., a Delaware corporation, | |
| Defendants. | |

## DECLARATION OF KAAREL KOTKAS IN SUPPORT OF
## NOTICE OF REMOVAL

I, Kaarel Kotkas, hereby declare:

1.      I am the President of Veriff, Inc., ("Veriff") a defendant in the above-captioned matter. I make this declaration in support of Veriff's Notice of Removal. This declaration is based on my own personal knowledge. If called upon as a witness, I would and could testify competently to the matters stated herein.

2.      Veriff, Inc. was incorporated in Delaware on February 26, 2018. Veriff, Inc.'s headquarters and principal place of business is in the state of New York.

3.      Veriff does not have any offices, real estate, or bank accounts in the state of Illinois.

DocuSign Envelope ID: 9074AA5C-7C68-44BF-9683-5A976AA8440F

I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct.

Executed this ____15-12-2021____ day of December 2021 in Tallinn, Estonia.

By: _____

Kaarel Kotkas

President, Veriff, Inc.

DocuSign Envelope ID: 9074AA5C-7C68-448F-9683-5A976AA8440F

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December _____, 2021, she

caused a true and correct copy of the foregoing **DECLARATION OF KAAREL KOTKAS IN**

**SUPPORT OF NOTICE OF REMOVAL** to be filed electronically. Notice of this filing will be

sent to all parties registered on this Court's ECF system by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.


/s/ Debra R. Bernard